**Cecil John OGEA, Plaintiff,**

v.

**LOFFLAND BROTHERS CO.,**
**Defendant-Appellant,**

v.

**PHILLIPS PETROLEUM CO., Third**
**Party Defendant-Appellee.**

No. 78–2838.

United States Court of Appeals,
Fifth Circuit.

July 25, 1980.

Rehearing Denied Sept. 10, 1980.

---

Edmund E. Woodley, F. Steve Landreneau, Lake Charles, La., for defendant-appellant.

Scofield, Bergstedt & Gerard, John B. Scofield, Lake Charles, La., for third party defendant-appellee.

Before THORNBERRY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

THORNBERRY, Circuit Judge:

This action arises out of an accident that occurred on a fixed platform located in the Gulf of Mexico that is owned by Phillips Petroleum Company and operated by Loffland Brothers. This appeal follows a decision by the United States District Court for the Western District of Louisiana in favor of Phillips' interpretation of a drilling contract between Phillips and Loffland and awarding attorney's fees to Phillips. We affirm the district court's denial of Loffland's claim for indemnity and reverse with regard to the award of attorney's fees.

On March 4, 1976, Cecil Ogea, an employee of International Hammer, was working in the Gulf of Mexico on a drilling rig operated by Loffland located on a fixed platform owned by Phillips. Ogea stepped into a puddle of oil while working on a deck above the drilling floor. He began descending a stairway when he slipped and fell because his shoes had been made slippery from stepping into the oil. Ogea filed suit against Loffland exclusively alleging that Loffland was negligent and claiming damages in the amount of $285,000.00. Schlumberger Well Surveying Corporation was brought into the suit by Ogea as an additional defendant in a supplemental complaint. Almost one year after Ogea filed his original complaint, Loffland asserted a third-party complaint against Phillips seeking indemnity. Phillips asserted a counterclaim against Loffland alleging that Loffland was obligated to obtain liability insurance covering Phillips and that its failure to do so constituted a breach of contract. Loffland and Schlumberger settled with Ogea on February 10, 1978, with Loffland's contribution toward that settlement being $60,000.

Loffland continued to pursue its third-party claim for indemnity against Phillips. The subject of the litigation was the interpretation of a drilling contract entered into between Loffland and Phillips on September 20, 1974. The drilling contract included

an indemnity clause providing that Phillips would indemnify Loffland under certain circumstances with Loffland indemnifying Phillips in other cases. The drilling contract also contained an insurance clause obligating Loffland to acquire comprehensive general liability insurance to cover losses up to $500,000.00, naming Phillips as a co-insured. Also, the insurer was required to waive any rights of subrogation against Phillips.

On May 26, 1978, the district court rendered its decision in favor of Phillips adopting an either-or analysis. Either Loffland obtained the proper insurance coverage or it did not. If it did, Phillips was protected up to $500,000.00 for any injuries. If Loffland did not obtain an insurance policy in compliance with the drilling contract, it was not entitled to indemnification because it had breached its contract. On June 16, 1978, Loffland filed a Motion for New Trial or Rehearing. Loffland's application for rehearing was denied on July 26, 1978.

I. Insurance.

At issue in this case is the interpretation of the drilling contract executed by Phillips and Loffland on September 20, 1974. During the contract negotiations, Phillips proposed the use of its standard drilling contract which had an indemnity provision running exclusively from Loffland to Phillips. Loffland countered with a contract providing that Phillips would indemnify Loffland under certain circumstances and Loffland would indemnify Phillips under other circumstances. The specific provisions of the drilling contract dealing with indemnity consist of the following language:

14.5 Contractor's Personnel and Personnel of Subcontractors of Contractor

Contractor [Loffland] shall protect, indemnify, investigate, defend and hold Company [Phillips] harmless from any and all claims, demands or causes of action in favor of or asserted by Contractor's personnel, agents or invitees, or by the personnel or agents of Contractor's subcontractors on account of personal injury or death arising out of or resulting from the operations to be performed by Contractor as contemplated by this Agreement, regardless of whether such injury or death is contributed to, or caused solely by the negligence of, Company, or results from any equipment (including the Platform), materials or supplies furnished by Company.

14.6 Company's Personnel and Personnel of Subcontractors of Company

Company shall protect, indemnify, investigate, defend and hold Contractor harmless from any and all claims, demands or causes of action in favor of or asserted by Company's personnel, agents, or invitees, or by the personnel or agents of Company's subcontractors on account of personal injury or death arising out of or resulting from the operations to be performed by Company as contemplated by this Agreement, regardless of whether such injury or death is contributed to, or caused by the negligence of, Contractor, or results from any equipment, including the Drilling Unit, materials or supplies furnished by Contractor.

Phillips accepted Loffland's form of contract but conditioned its acceptance on the satisfaction of certain insurance requirements. The drilling contract obligated Loffland to obtain comprehensive general liability insurance naming Phillips as a co-insured and requiring that the policy contain a provision whereby the insurer would waive any rights of subrogation as against Phillips. These requirements were incorporated in the drilling contract using the following language:

15.1 Insurance Required

Contractor [Loffland] shall procure and maintain, at Contractor's expense, during the term of this Agreement the insurance policies described in Part I of Exhibit 'D' with financially responsible insurance companies and with policy limits not less than those indicated.

15.2 Co-Insureds and Waiver of Subrogation

All insurance policies of Contractor related to the operations conducted hereunder shall name Company [Phillips], its

subsidiaries, affiliates, and agents, the owners of the lease and joint venturers, designated to Contractor in writing, (in this paragraph collectively call 'Company') as co-insureds with respect only to work performed under this Contract, and shall be endorsed to waive all express or implied rights of subrogation against Company. Contractor shall require its respective subcontractors to name Company as co-insured with waiver of all express or implied rights of subrogation against Company on all insurance policies of such Contractor which apply to work performed by them with regard to the wells drilled pursuant to this Agreement.

Exhibit "D" of the drilling contract provided that the policy naming Phillips as co-insured should have limits of not less than $500,000.00.

The district court's either-or analysis appears proper in this case in light of our decision in *Stewart v. Cran-Vela Rental Co., Inc.,* 510 F.2d 982 (5th Cir. 1975). In *Stewart,* an employee of Cran-Vela Rental Co. was injured while working offshore as a roustabout. Cran-Vela contracted to furnish Shell Oil Company labor and equipment. The contract also contained a provision requiring Cran-Vela to obtain worker's compensation insurance coverage under the Longshoremen's and Harbor Workers' Act, the Outer Continental Shelf Lands Act, and the Jones Act on the employees furnished Shell. In addition, Cran-Vela was to make sure that the policies either (1) included a waiver of subrogation clause by the insurer in favor of Shell or (2) named Shell as a co-assured in each policy. The compensation policy acquired by Cran-Vela neither contained a waiver of subrogation nor named Shell as a co-assured.

Stewart sued Cran-Vela and Shell seeking damages for the personal injuries he sustained while working for Cran-Vela on a Shell job. Shell settled the case, but specifically reserved the right to pursue its cross-claim against Cran-Vela for breach of contract. This court recognized that Cran-Vela breached the contract and as such held that Cran-Vela was liable to Shell for damages caused by its failure to satisfy the contractual provisions which would have held Shell harmless. Shell was entitled to reimbursement from Cran-Vela for the amounts Shell paid to the compensation insurer because of the breach of contract.

■ A similar situation is presented in this case assuming there was a breach of contract. Article 15.1 obligated Loffland to procure and maintain certain insurance policies within the designated limit of $500,000.00. Article 15.2 provides that Phillips was to be named a co-insured in the policies acquired by Loffland and that the insurance policy was to be endorsed to waive all express or implied rights of subrogation against Phillips. As in *Stewart,* assuming Loffland breached the drilling contract, it is liable to Phillips for damages caused by its failure to satisfy its contractual obligations. Phillips would be relieved of liability.

On the other hand, if Loffland did not breach the contract because it complied with the contractual provisions, Phillips is again excused from liability. Phillips was protected under the terms of the drilling contract for liability not in excess of $500,000.00. Ogea's claim was in the amount of $285,000.00. He settled for $60,000.00. Both of these figures are well below the level of protection afforded to Phillips.

■ Loffland claims that this action should be exclusively governed by the indemnity sections of the contract. It approves the district court's conclusion that Ogea was injured while conducting operations for Phillips and points to Article 14.6 of the drilling contract under which Phillips agreed to indemnify Loffland in all claims for personal injury brought by personnel of its contractors such as International Hammer. Loffland contends that we should not refer to any other provisions of the contract in assessing Phillips' liability.

We cannot accept Loffland's contention. To do so would ignore the well-recognized principle under Louisiana law that the contract must be viewed as a whole. *See, e.g., Day v. Ocean Drilling and Exploration Co.,* 353 F.Supp. 1350 (E.D. La. 1973). As such,

Article 14 and Article 15 of the drilling contract must be read in conjunction with each other in order to properly interpret the meaning of the contract. By so doing, it is clear that the parties intended that Phillips would not be held liable for injuries incurred on its off-shore platform up to $500,000.00. The insurance to be acquired and maintained by Loffland would cover such damages. For damages in excess of $500,000.00, the indemnity provisions would come into effect. Because Ogea's claim of $285,000.00 and actual settlement of $60,000.00 are both less than $500,000.00, Phillips should not incur any liability. The indemnity provisions do not come into play.

## II. Attorney's fees.

The district court concluded that Phillips was entitled to costs and attorney's fees that it incurred in defense of the action. The contract provides that this issue is to be governed by Louisiana law. Loffland claims that the district court committed error when it awarded Phillips attorney's fees in light of the well settled principle of Louisiana law that as a general rule, attorney's fees are not allowed except where authorized by statute or contract. *Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So.2d 386 (1970); *Roberie v. Sinclair Refining Company*, 252 So.2d 488 (La.App. 1971); *Walters Air Conditioning Company v. Fireman's Fund Insurance Company*, 252 So.2d 919 (La.App. 1971). An examination of the drilling contract reveals no attorney's fee provision relevant to this case. Also, no Louisiana statute expressly provides for an award of attorney's fees in this situation.

We must examine this general rule in light of another well settled principle of Louisiana law which provides that an insurer has a broad duty to defend its insured regardless of the outcome of the case. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969); *Benoit v. Fuselier*, 195 So.2d 679 (La.App. 1967). If Loffland had properly obtained the insurance, Phillips would have been named a co-insured and the insurer would have been required to defend Phillips.

In support of applying this latter principle to this case, Phillips relies on a Louisiana appeals court decision in *Ordonez v. W. T. Grant Company*, 297 So.2d 780 (La.App. 1974). *Ordonez* presents a fact situation remarkably similar to the facts of this case except for one significant distinction. In *Ordonez*, the plaintiff was injured while on land owned by Crisler of Louisiana, Inc. Ordonez sued the builder, Carothers Construction Company, and its insurance company, Employers Mutual Liability Insurance of Wisconsin, as well as Crisler. As in this case, in a building contract between Crisler and Carothers, Carothers bound itself at its expense to provide protective liability insurance for Crisler and to name Crisler as co-assured. Carothers breached the contract when it failed to satisfy its obligations because it did not pay the premium for the coverage of Crisler. Therefore, Employers refused to represent Crisler. Crisler was required to hire an attorney to defend itself in the suit brought by Ordonez. The court held that Carothers was liable for attorney's fees and other costs of defense incurred by Crisler since it breached the contract, with the result being that Crisler had to bear the costs of defense of the lawsuit.

While *Ordonez* is almost exactly on point, there is one significant distinction between it and the facts of this case that will not allow it to govern this case. In *Ordonez*, the building contract contained a clause stating that:

> Should the OWNER [Crisler] * * * be compelled to employ an attorney to enforce any part of this Contract against CONTRACTOR [Carothers] * * * the reasonable fees of such attorneys shall be a charge against the CONTRACTOR * * *.

*Id.* at 782. Crisler was compelled to employ an attorney because Carothers breached the contract by failing to obtain the proper insurance coverage. *Ordonez* must be viewed merely as authority for the general rule that attorney's fees will only be awarded when provided for by statute or *contract.* It does not govern us in this case where no provision for attorney's fees exists in the drilling contract.

■ We must therefore examine the general rule to determine whether there are any exceptions to the rule applicable to this case. An action for breach of contract does not fall within one of the limited exceptions to the rule. The Louisiana Supreme Court stated in *Maloney v. Oak Builders, Inc., supra*, 235 So.2d at 390, that attorney's fees are not allowable in an action for breach of contract unless there is a specific provision therefor in the contract. Parties are allowed to contract with respect to attorney's fees and have an opportunity to stipulate in the contract that attorney's fees would be due in the event the contract was breached. Where the parties fail to so provide, the law will not imply such a provision in the contract. *Rutherford v. Impson*, 366 So.2d 944 (La.App. 1978), *writ denied*, 369 So.2d 140 (La. 1979).

The Louisiana Supreme Court spelled out the limited exceptions in *Hernandez v. Harson*, 237 La. 389, 111 So.2d 320 (1959) as follows:

It is well recognized in the jurisprudence of this Court that as a general rule attorney's fees are not allowed except where authorized by statute or contract. *Rhodes v. Collier*, 215 La. 754, 41 So.2d 669; *Efner v. Ketteringham*, 217 La. 719, 47 So.2d 331; *Brantley v. Tugwell*, 223 La. 763, 66 So.2d 800; *Griffin v. Bank of Abbeville & Trust Co.*, 228 La. 857, 84 So.2d 437; *Chauvin v. LaHitte*, 229 La. 94, 85 So.2d 43; *McNeill v. Elchinger*, 231 La. 1090, 93 So.2d 669; *Breaux v. Simon*, 235 La. 453, 104 So.2d 168. A well recognized exception to this rule is that attorney's fees are allowed as damages when conservatory writs have been dissolved on motion and not on defenses applicable to the merits. *Brantley v. Tugwell*, supra; *Edwards v. Wiseman*, 198 La. 382, 3 So.2d 661. However, there is considerable conflict in the jurisprudence as to other exceptions to this rule. A reading of the various opinions handed down by this Court in this respect reveals that attorney's fees have been allowed when injunction proceedings have been instituted to prevent the seizure and sale of property owned by a third person. In some cases when the injunction is maintained attorney's fees were allowed and in other cases attorney's fees were only allowed as an element of damages where the injunction was dissolved on hearing of the merits. The two different views in this respect are thoroughly pointed out in the cases of *Soniat v. Whitmer*, 141 La. 235, 74 So. 916 and *Jackson v. Bouanchaud*, 178 La. 26, 150 So. 567. In the dissenting opinions of the then Chief Justice written in both of these cases, it is stated that the Court should avail itself (at that time) of the opportunity to overrule one line or the other of the conflicting decisions reviewed in those cases.

"We do not feel that it would be appropriate in this case to decide which line of jurisprudence should be followed in such injunction proceedings because we do not have such issue before us and any comment that we might make would be merely obiter dictum.

"There is also a conflict in the decisions of this Court as to whether attorney's fees should be allowed in cases of the unlawful seizure of the property of a third party. It would appear that in these cases the basis of the award is that the seizure was made without probable cause, or the exercise of due diligence, or with malice and wanton disregard for the rights of others. This line of cases holds that such action is forcible trespass or tort giving rise to punitive damages. It is questionable whether these decisions are correct under our law."

*Id.*, 111 So.2d at 327. An additional exception, bad faith or technical fraud, recognized as early as 1947, has since been overruled. *Lloyd v. Merit Loan Company*, 253 So.2d 117 (La.App.), *writ ref'd*, 259 La. 1050, 254 So.2d 462 (La. 1971), *overruling Berry v. Ginsburg*, 98 So.2d 548 (La.App. 1953); *Raney v. Gillen*, 31 So.2d 495 (La. App. 1947).

■ It is clear that this case does not come within one of the remaining limited exceptions. Therefore, the general rule will control. Because attorney's fees are not provided for in the drilling contract or by

statute, we must reverse the district court's decision with respect to attorney's fees.

AFFIRMED IN PART; REVERSED IN PART.