**COMPUTALOG U.S.A., INC.**

v.

**MALLARD BAY DRILLING, INC.**

Civil Action No. 96–2654.

United States District Court, E.D. Louisiana.

Sept. 30, 1998.

Mark Charles Dodart, Neil Charles Abramson, Nora Tierney Bolling, Phelps, Dunbar, LLP, New Orleans, LA, for Computalog U.S.A., Inc.

John Links Duvieilh, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, LA, for Mallard Bay drilling, Inc.

Bruce Reginald Hoefer, Jr., Robert Timothy Lorio, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, Mark Charles Dodart, Neil Charles Abramson, Nora Tierney Bolling, Phelps, Dunbar, LLP, New Orleans, LA, for Louisiana Land & Exploration Co.

PORTEOUS, District Judge.

This cause came for hearing on a previous date upon the cross motions for summary judgment by defendant, Mallard Bay Drilling Inc. and third-party defendant, Louisiana Land & Exploration Company. Oral argument was waived and the matter was taken under submission on the briefs.

The Court, having studied the memoranda submitted by the parties is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I. BACKGROUND

On August 13th, 1996, the plaintiff, Computalog, U.S.A., Inc. (hereinafter "Computalog") filed the present action against the defendant, Mallard Bay Drilling, Inc. (hereinafter "Mallard") for damages resulting from the drop of a wireline unit. *See* Doc. # 1. Computalog asserts that it is the owner of a certain wireline unit identified as Unit # 9502 (hereinafter "the Unit") which consisted of a skid unit and cable, computer system, and associated auxiliary items. Complaint, paragraph IV. In June, 1996, Computalog claims it contracted with Mallard for the use of the Unit on Mallard Bay Rig # 54 ("Rig # 54"). Complaint, paragraph V. On June 16th, 1996, Computalog alleges that the Unit was located aboard the barge BB34 adjacent to Rig # 54. Complaint, paragraph VI. As the Mallard Bay employees were off-loading the Unit, the Unit was allegedly dropped onto the barge BB34. Complaint, paragraph VI. Computalog contends the Unit is a total loss. Complaint, paragraph VIII. Computalog seeks damages from Mallard resulting from the loss of the Unit. First Amended Complaint, paragraphs IX, X and Original Complaint, paragraph XI.

On November 5th, 1997, Mallard filed a third-party complaint against Louisiana Land and Exploration Company (hereinafter "LL & E") to enforce an alleged indemnity obligation. Specifically, Mallard contends that pursuant to the contract between it and LL & E, Rig # 54 was being used to drill a well

for LL & E. Third–Party Complaint, paragraphs # 3 and # 4. Mallard alleges that LL & E contracted with Computalog to provide the Unit for use of Rig # 54. Third–Party Complaint, paragraph # 6. Mallard seeks to enforce an indemnity provision contained within the contract between it and LL & E. Third–Party Complaint, paragraph # 11.

On January 14th, 1998, LL & E filed a Fourth–Party Complaint against Computalog and its insurer seeking to enforce an indemnity obligation allegedly contained within the Master Service Contract between LL & E and Computalog. *See* Doc. # 37 Specifically, LL & E contends that Computalog was providing services and equipment to LL & E pursuant to a Master Service Contract dated May 7th, 1990, which obligates Computalog to defend, indemnify and hold LL & E harmless from and against any and all claims arising from property damage or other loss sustained by Computalog, even if caused by the negligence or fault of LL & E, which defense and indemnity obligations specifically include the claims asserted by Mallard. Fourth–Party Complaint, paragraph VII. LL & E also alleges Computalog was to provide insurance coverage of the same. Fourth–Party Complaint, paragraph VIII.

Now, Mallard seeks summary judgment on contractual defense and indemnity issues, which would require LL & E to defend and indemnify the claims asserted by Computalog. Specifically, Mallard contends there are no issues of material fact that Computalog was LL & E's "invitee" under the contract at issue and that the alleged damages to the Unit did not result form the "gross negligence" or "willful misconduct" of Mallard.

LL & E filed a cross summary judgment contending Mallard is precluded from seeking indemnity from LL & E because the contract provides that Mallard is required to exhaust the insurance it agreed to obtain for and on behalf of LL & E as an additional insured before seeking contractual indemnity from LL & E.

## II. *LEGAL ANALYSIS*

### A. *Law on Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir.)) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Industrial Co.,* 475 U.S. at 588, 106 S.Ct. 1348. Finally, the court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *LL & E's Motion for Summary Judgment*

█ The Drilling Bid Proposal and Daywork Drilling Contract (also referred to as the "Master Service Contract") (hereinafter "Contract") between LL & E and Mallard contains indemnity clauses which provide

that LL & E will indemnify Mallard under certain circumstances and that Mallard will indemnify LL & E under other circumstances. Paragraph 14.8 contains the requirements for Mallard's indemnification of LL & E, while paragraph 14.9 sets forth LL & E's agreement to indemnify Mallard under certain circumstances. Paragraph 14.9 states:

> **14.9 [LL & E's] Indemnification of [Mallard]:** *[LL & E] agrees to protect, defend, indemnify, and save [Mallard], its officers, directors, employees and joint owners harmless from and against all claims,* demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the sole, joint or concurrent negligence of any party or parties, *arising in connection herewith in favor of [LL & E's] employees or invitees* (other than those parties identified in paragraph 14.8) on account of bodily injury, death or *damage to property unless caused by the gross negligence or willful misconduct* of [Mallard], it subcontractors or its or their respective employees, agents, invitees or representatives, in which case [Mallard] shall indemnify [LL & E] in this regard. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 14.9 (which [Mallard] and [LL & E] hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole) exceeds the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

(emphases added). This indemnification provision should be read in light of another portion of the Contract, which sets forth the insurance requirements:

> **13. INSURANCE**
>
> ***(a) [Mallard] shall throughout the term of this Contract carry and maintain insurance coverages required in Exhibit A, attached hereto and by this reference fully incorporated into this Contract.... [S]uch insurance shall be primary over any insurance coverages that may be maintained by [LL & E]....*** In the event that liability for any loss or damage be denied by the insurer or insurers, in whole or in part, because of breach of said insurance by [Mallard], or for any other reason, including the insolvency or liquidation of the insurer, or if [Mallard] fails to maintain any of the insurance herein required, [Mallard] shall be responsible for and hold harmless and indemnify [LL & E] and [LL & E's] co-owners, partners, joint venturers, if any, and its and their respective subsidiaries, affiliated companies, associates, directors, officers, employees, servants, and agents against all claims, demands, costs and expenses, including attorney's fees, which would otherwise be covered by said insurance and any other damages resulting from lack of insurance required hereunder. *The insurance obligations of [Mallard] are separate from [Mallard's] indemnify [sic] obligations under this Contract, and the limits of insurance set forth in Exhibit A are in no way intended to limit [Mallard's] indemnity obligations under this Contract.*

(emphases added). Exhibit A, which is expressly and fully incorporated into the Contract by paragraph 13, sets forth the insurance coverages required to be maintained by Mallard. In pertinent part Exhibit A states the following:

> **3. INSURANCE (See Par. 13) (See Par. 23(a))**
>
> **3.2** *Comprehensive General Liability Insurance, in an amount of at least $5,000,000 (combined single limit per each occurrence).* Such insurance shall be endorsed specifically to include coverage for the following:
>
> (a) Public Liability, personal injury, *property damage,* and premises coverage....
>
> (e) *[LL & E], its affiliates, and subsidiaries, officers, directors, and employees shall be named as* **additional insureds** *with coverage extended for* **all risks** *protected against by such policy.*

(f) *Waiver of subrogation in favor of [LL & E], its affiliates, subsidiaries, and their respective officers, directors, and employees.*

(g) Contractual liability insurance covering [Mallard's] obligations to LL & E, its affiliates, and subsidiaries, officers, directors, and employees under this Contract, including but not limited to those under the Indemnities section of this Contract.

(emphases added). In its motion for summary judgment, LL & E argues that, although the Contract makes LL & E an indemnitor for certain claims against Mallard (in this case, a claim against Mallard by an alleged "invitee" of LL & E), paragraph 13 of the Contract properly controls this motion for summary judgment. *See* Doc. # 70. The Court agrees with LL & E as to the appropriate interpretation of the Contract.

■■■■ In its memorandum in opposition to LL & E's motion for summary judgment, Mallard correctly states the law applicable to such contract interpretations. *See* Doc. # 74. A maritime contract must be interpreted according to the general rules of contract, construction and interpretation. *See Marine Overseas Services, Inc. v. Crossocean Shipping, Co., Inc.,* 791 F.2d 1227 (5th Cir.1986); *Ogea v. Loffland Brothers Co.,* 622 F.2d 186 (5th Cir.1980) (hereinafter *"Ogea"*). Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole. *Southwestern Engineering Co. v. Cajun Elec. Power Co-op., Inc.,* 915 F.2d 972 (5th Cir.1990). Finally, each provision of a contract must be given a meaning which renders it, along with all other provisions, effective rather than meaningless. *See Lewis v. Hamilton,* 652 So.2d 1327 (La.1995).

In two United States Fifth Circuit Court of Appeals cases, the court addressed contractual language very similar to that contained in the Contract in dispute. First in *Ogea,* and again in *Tullier v. Halliburton Geophysical Services, Inc.,* 81 F.3d 552 (5th Cir. 1996) (hereinafter *"Tullier"*), the Fifth Circuit held that the comprehensive general liability insurance maintained by the indemnitee was coverage primary to that of the indemnitor, who was named in part of the contract as an additional insured.

In *Ogea,* Phillips was obligated to indemnify Loffland for damages paid to an employee of Phillip's contractor regardless of fault. *Ogea,* at 187–190. The contract between Loffland and Phillips also provided that Loffland was to acquire insurance naming Phillips as an additional insured for obligations incurred in relation to the drilling operations and to include a waiver of subrogation in favor of Phillips. *Id.* The Fifth Circuit held that the indemnity provision would only apply to damages in excess of the required limit of liability and that Phillips was relieved of liability because Phillips' indemnity obligation was covered by the policy. *Id.* In reaching its decision, the Fifth Circuit stated as follows:

> Loffland claims that this action should be exclusively governed by the indemnity sections of the contract.... Loffland contends that we should not refer to any other provisions of the contract in assessing Phillips' liability.
>
> We cannot accept Loffland's contention. To do so would ignore the well-recognized principle under Louisiana law that the contract must be viewed as a whole. (Citations omitted). As such, Article 14 and Article 15 of the drilling contract must be read in conjunction with each other in order to properly interpret the meaning of the contract. By doing so, it is clear that the parties intended that Phillips would not be held liable for injuries incurred on its off-shore platform up to $500,000.00. The insurance to be acquired and maintained by Loffland would cover such damages. For damages in excess of $500,000.00, the indemnity provisions would come into effect.

*Ogea,* at 189–190.

Similarly, in *Tullier* the contracting parties to a time charter for a vessel used in the offshore oil and gas industry agreed to indemnify each other for job-related liabilities and to back up the cross-indemnity provisions with insurance. *Tullier,* at 552. The contractual language obligated Halliburton to indemnify McCall for injuries sustained by a Halliburton employee while aboard McCall's

vessel. *Id.* at 552–554. However, in addition to the indemnity provisions, the contract provided that McCall was to obtain primary insurance on behalf of Halliburton as an additional insured.[1] *Id.* Citing to *Ogea,* the court in *Tullier* recognized the following:

> this court has held that a party ... who has entered into a contractual indemnity provision but who also names the indemnitor ... as an additional assured under its liability policies, must first exhaust the insurance it agreed to obtain before seeking contractual indemnity.

*Id.* at 553 (citations omitted). As stated in *Tullier,* "the controlling fact ... is the existence of 'additional assured' coverage whereby an indemnitee agreed to procure insurance coverage for the benefit of the indemnitor." *Id.* at 554. It is irrelevant whether the parties directly negotiated this result. *Id.*

Both *Ogea* and *Tullier* rest on the legal imperative to read the indemnitee and insurance procurement provisions harmoniously. *Tullier,* at 554. This Court believes that this is the proper course to follow in the present case. Upon reading paragraph 13 of the Contract in conjunction with paragraph 3.2 of Exhibit A, this Court is compelled to follow the Fifth Circuit's holdings in *Ogea* and *Tullier.* Paragraph 13 requires Mallard to carry and maintain the insurance coverages specified in Exhibit A, and further states that such insurance shall be primary over any insurance coverages that may be maintained by LL & E. One of the insurance coverages that Exhibit A mandates Mallard to carry and maintain is comprehensive general liability insurance, in an amount of at least $5,000,000 (combined single limit per each occurrence). *See* paragraph 3.2. This insurance must be endorsed specifically to include coverage for, among other things, property damage. *Id.* Furthermore, Mallard must name LL & E in this coverage as *additional*

*insureds* with coverage extended for all risks protected against by such policy, as well as waive subrogation in favor of LL & E. *Id.* The above-mentioned language parallels closely that found in both *Ogea* and *Tullier.*

However, Mallard contests the applicability of the *Ogea* and *Tullier* line of reasoning in this case. *See* Doc. # 74. In its first argument, Mallard claims that the Contract itself creates conflicts with Exhibit A. *Id.* Paragraph 16 of the Contract states that "[i]n the event of any conflict between the provisions of the standard agreement and Exhibits A or B attached hereto and made a part hereof, the former shall be controlling." The Court finds that there is no such conflict between the Contract and Exhibit A, at least as to the issue in dispute.

Mallard contends that the "standard agreement," *i.e.,* the Contract, when read without the exhibits, contains no conflict and establishes by its very terms, that the insurance clause in paragraph 13 was intended to "doubly insulate" LL & E from those risks allocated to Mallard via indemnity provisions contained in the Contract. *See* Doc. # 74. The Court finds Mallard's interpretation to be erroneous. Although paragraph 16 states that the Contract should trump the exhibits when a conflict arises, the Court must first attempt a consistent reading of paragraphs 13 and 14.9 of the Contract, and paragraph 3.2 of Exhibit A. *See Ogea; Tullier* at 554 (both cases rest on the legal imperative to read the indemnitee and insurance procurement provisions harmoniously). The Court finds that a consistent reading of the Contract and Exhibit A is possible, thus paragraph 16 is inapplicable.

Moreover, Mallard maintains that the express mention of the effect of the insurance requirements on Mallard's indemnity obligations in paragraph 13(a) serves to under-

---

1. Note that in the contract at issue in *Tullier,* the parties agreed to treat the insurance provisions backing up their indemnities quite differently, with Halliburton required to insure the liabilities it assumed under the contract with a manuscript comprehensive general liability coverage with appropriate maritime endorsements, while McCall's insurance was intended specifically to cover Halliburton as an additional assured, to

delete the "as owner" limitations with respect to Halliburton, and to constitute primary coverage for the additional assureds. *Tullier,* at 553. This Court recognizes the possibility that the Contract in issue here can treat the parties differently with regard to insuring the risks supposedly shifted by the indemnification agreement without causing any actual conflicts. *See infra,* p. 626.

mine the harmonious interpretation of the Contract and Exhibit A since there is no such mention of any effect of the insurance requirements on LL & E's indemnity obligations. *See* Doc. # 74. The Court finds this to be faulty reasoning, in that the mentioning of one thing does not preclude the possibility that another thing can still exist. The absence of such contractual references as to LL & E's indemnity obligations requires the Court to look elsewhere in the Contract and its Exhibits.

Furthermore, a mere reference to self-insurance in paragraph 14.9 of the Contract does not reflect any contractual reference to primary as opposed to additional insurance.

In addition to its arguments that the Contract conflicts with Exhibit A and, therefore, that the Contract should control, Mallard points to paragraph 3.2(g) of Exhibit A as supporting its position that the insurance provision only provides support for Mallard's indemnity obligations. *See* Doc. # 74. Once again, the paragraph cited to by Mallard does not control the issue in this case, and the absence in paragraph 3.2(g) of Exhibit A of an express mention of an endorsement by Mallard to cover LL & E's indemnity obligation does not effect the application of the *Ogea* and *Tullier* line of reasoning.

Finally, Mallard submits that the contract must be deemed ambiguous since it is susceptible of two reasonable interpretations. *See* Doc. # 74 (citing *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425 (5th Cir.1996)). The Court does not find the Contract and Exhibit A to be ambiguous on the issue in dispute. Therefore, Mallard's argument fails here.

Having found that the Fifth Circuit's holdings in *Ogea* and *Tullier* are directly in line with the facts of this case, the Court grants LL & E's motion for summary judgment.

## C. *Mallard's Motion for Summary Judgment*

Mallard filed a motion for summary judgment seeking judgment on contractual and indemnity issues, thereby requiring LL & E to defend and indemnify Mallard for those claims asserted against Computalog. *See* Doc. # 67. Mallard cites to paragraph 14.9 (the indemnification agreement) of the Contract as obligating LL & E to defend and indemnify Mallard for the claim asserted by Computalog if: (1) Computalog was LL & E's "invitee"; and (2) the damage did not result from "gross negligence" or "willful misconduct" on the part of Mallard or its employees. *Id.*

The Court has already granted LL & E's motion for summary judgment, finding that the Fifth Circuit decisions in *Ogea* and *Tullier* control the disposition of this case. Because Mallard is precluded as a matter of law from enforcing LL & E's indemnity obligation (paragraph 14.9 of Contract) until it has exhausted the insurance it agreed to obtain on behalf of LL & E (paragraphs 13 of the Contract and 3.2 of Exhibit A), the Court finds it unnecessary to address the issue presented in Mallard's motion for summary judgment.

## III. CONCLUSION

The Court finds that the *Ogea* and *Tullier* line of cases controls the issue in dispute. Therefore, Mallard is precluded as a matter of law from enforcing LL & E's indemnity obligation until it has exhausted the insurance it agreed to obtain on behalf of LL & E. Because Computalog has stipulated that its damages are less than the limits of liability required in paragraph 3.2 of Exhibit A ($5,000,000.00), and insurance coverage reaching that amount has been procured in one form or another by Mallard, LL & E has no direct liability to Mallard.[2] *See* Doc. # 70.

---

2. In response to discovery, Mallard produced Policy 6240 and Policy APH–14439. Policy 6240 provides Comprehensive General Liability Coverage, including contractual liability coverage with respect to liability for property damage assumed under a contract, with limits of liability of $1,000,000.00. *See* Doc. # 70. In addition, Policy APH–14439 provides umbrella coverage up to $25,000,000.00. *Id.* Further, both policies pro-

vide that any person or corporation that Mallard has contractually agreed to name as an additional insured (such as LL & E) is considered an additional insured under the policies. *Id.* Any finding to the contrary as to insurance coverage would obligate Mallard to LL & E for the amount that would have been covered under paragraph 3.2 of Exhibit A ($5,000,000.00) and for damages

Accordingly,

**IT IS ORDERED** that the motion of LL & E for summary judgment is **GRANTED.** Therefore, since Computalog has stipulated that its damages do not exceed $5,000,000.00, LL & E's indemnity obligations should be fully covered by the insurance policies, and LL & E should thus be relieved of all contractual liability to Mallard.

**IT IS FURTHER ORDERED** that the motion of Mallard for summary judgment is **DENIED.**

for breach of contract. *See Ogea; Tullier;* and
paragraph 13 of the Contract.