**SONAT EXPLORATION**

v.

**FALCON DRILLING, CO. INC., et al.**

**No. CIV. A. 98–2187.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Sept. 23, 1999.

Order Denying New Trial Jan. 26, 2000.

■■■■■■■■■■■■■■■■■■

---

Bryan D. Schofield of Broussard, David & Daigle, Lafayette, LA, for Plaintiff.

Edwin G. Pries, Jr. of Preis, Kraft & Roy, Lafayette, LA, for Defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PUTNAM, Senior District Judge.

Before the Court are cross-motions for summary judgment filed by Sonat Exploration Company, Inc. ("Sonat") and FDI Marine, Inc. ("FDI"). For the reasons stated herein, the motion filed by Sonat is granted and the motion filed by FDI is denied.

## I. FACTS

Sonat entered into an Offshore Drilling Contract with Falcon Drilling Company, Inc. ("Falcon") to drill oil and gas wells in the Gulf of Mexico. In connection with these operations, on January 29, 1997, Scott Murphy, an employee of Sperry–Sun Drilling Services ("Sperry–Sun"), was injured while working aboard the Falrig 82. The Falrig 82 is owned by Falcon and was being operated by FDI at the time of the accident. Sperry–Sun was hired by Sonat to provide services on the rig.

Murphy filed a suit for damages against FDI in the Fifteenth Judicial District, Parish of Vermilion, alleging he was injured when he slipped and fell while descending a stairway on the Falrig 82. FDI tendered defense and indemnity of that claim to Sonat pursuant to the indemnity provisions in the Contract. Sonat responded by filing the present declaratory judgment action against FDI, Falcon, its affiliates, and its insurers, seeking a judgment that it does not owe defense and indemnity to FDI and/or, if defense and indemnity is owed, Sonat is entitled to additional insured coverage on Falcon's policy. The Contract, its Exhibits, and related insurance policies have been entered into the record as attachments to Sonat's motion. Relevant portions of the attachments will be quoted below as necessary.

## II. LAW AND OPINION

### A. Insurance Coverage Must Be Exhausted Before Defense and Indemnity Obligations Apply.

■■ In maritime contracts containing defense and indemnity as well as insurance procurement provisions, the insurance limits must be exhausted before defense and indemnity provisions apply. *Ogea v. Loffland Brothers Co.*, 622 F.2d 186 (5th Cir. 1980). In the present case, since this Court determines insurance coverage is available to Sonat for Murphy's claim through Falcon's policy an additional insured, it does not reach the issue of whether Sonat owes defense and indemnity to FDI.

A related issue raised by Sonat concerns the status of FDI as an affiliate of Falcon. Under the Contract, if FDI is an affiliate of Falcon, then Sonat would owe defense and indemnity to FDI. Again, because of the availability of insurance coverage, it is not necessary for the Court to reach this issue. To the extent, however, the affiliate status of FDI affects insurance coverage, the Court accepts the affidavit of Lloyd M. Pellegrin, Vice–President of Administration of Falcon Drilling Company, Inc., and concludes that FDI is an affiliate of Falcon.

### B. Falcon Was Obligated to Secure General Liability Insurance Coverage for All Purposes.

The central issue in these cross-motions concerns the procurement of insurance. Falcon argues its obligation in this regard is limited, while Sonat argues Falcon was obligated to obtain broad form liability coverage. The arguments of both parties on this issue are recapped below.

### 1. Falcon argues its insurance obligation was limited.

Falcon argues that the Contract limits Falcon's insurance procurement obligation to coverage for those risks and liabilities allocated to Falcon. Section 13.1 allocates the risks and liabilities of each party to their respective employees, contractors, subcontractors, and invitees. Section 13.1 reads, in part, as follows:

> The parties hereto recognize that, in connection with the operations contemplated by this Contract, accidents and events may occur in which property is lost, damaged or destroyed and/or in which persons may be killed or injured and/or which may result in illness of persons. The parties hereto further recognize that certain of said risks will be covered by insurance as provided in this Contract. Notwithstanding said insurance provisions or any other provisions of this Contract, the parties hereto further agree that, as between each other, the liability for said risks shall be allocated in the following manner, regardless (except as expressly provided herein) of who may be at fault, ... to-wit:
>
> A. *Contractor's Risk and Liabilities*
> (1) Personal injury, illness and/or death of employees of Contractor, its contractors and subcontractors, and its invitees.
>
> .　　.　　.　　.　　.
>
> B. *Company's Risks and Liabilities*
> (4) Personal injury, illness and/or death of employees of Company and third party contractors, subcontractors and invitees of Company (other than Contractor, its subcontractors, and invitees).

Each party, in turn, agrees to defend, release, indemnify and hold harmless the other for the liability they assume. The first two paragraphs of Section 13.2 read:

> Contractor hereby agrees to defend, release, indemnify and hold harmless Company against any and all claims, demands or suits which may be brought or asserted against Company by any third party whomsoever based upon any loss, damage, injury or death for which liability is above allocated to Contractor.
>
> Company hereby agrees to defend, release, indemnify and hold harmless Contractor against any and all claims, demands or suits which may be brought or asserted against Company by any third party whomsoever based upon any loss, damage, injury or death for which liability is above allocated to Contractor.

In addition to setting out the above indemnification liabilities, Section 13.2 obligates the parties to secure the necessary insurance:

> "Contractor and Company further agree that each has voluntarily provided insurance to give effect to the indemnities herein granted."
>
> Each party shall secure a waiver of subrogation from their insurers and shall cause the other party to be named as additional insured "to the extent of liabilities assumed under this Contract."
>
> "Each party shall secure and maintain all of the insurance policies set forth in Exhibit 'C' which that party is required to secure."

In addition, Section 14.2 requires Sonat be named as an additional insured on Falcon's policies "to the extent of liabilities assumed by [Falcon]." Thus, based on the above provisions, Falcon concludes it was only required to obtain coverage to the extent of its indemnification liability. Since Murphy's accident was a risk assumed by Sonat, not Falcon, there is no coverage afforded to Sonat under Falcon's policy,

### 2. Sonat argues Falcon was required to secure broad form liability coverage.

Sonat argues that Falcon's obligation to secure coverage for its indemnification liabilities is not exclusive of Falcon's insurance obligation. Section 14.1 obligates

Falcon to secure insurance covering all parties for all purposes:

> Contractor shall maintain, the cost and expense of which shall be borne exclusively by and paid for by Company, such insurance as will protect against all claims for damages, risks of loss, and contractual indemnities covered by this Contract, and specifically agrees to secure policies, among others, and with minimum limits of coverage as provided in Exhibit "C" in companies satisfactory to Company.

Sonat contends Falcon's obligation to secure all coverage for all purposes is offset by Sonat's obligation to reimburse Falcon for all cost of insurance.

Sonat also relies on other sections of the Contract. Section 13.3 provides that the indemnity and insurance provisions inure to the benefit of Sonat, while only the indemnity provisions inure to the benefit of Falcon. Based on this, Sonat should be able to benefit from all policies secured by Falcon.

Furthermore, Section 1 of Exhibit "C" provides that Falcon shall maintain the policies listed and shall invoice Sonat separately for the cost of all insurance:

> 1. Contractor shall carry and maintain throughout the period of the contract, at Sonat Exploration Company ("Company") expense me minimum insurance coverage (shown below): Company shall be invoiced separately for the cost of insurance.

In Section 2 of Exhibit "C", Sonat was to be named as additional insured on all general liability policies:

> 2. Contractor shall promptly, following execution of the Contract and before the performance of work hereunder, secure from its insurers a waiver of subrogation in favor of Company, its joint owners, its affiliates, and their respective officers, directors and employees in all of the insurance policies set forth in this Exhibit. With the exception of Worker's Compensation and Employer's Liability, all insurance policies provided by Contractor shall include Company, its joint owners, its affiliates, and their respective officers, directors and employees as additional insureds.

There is no provision here similar to the one in Section 13.2 of the Contract stating that the additional insured status is limited to the parties' indemnity liability. Therefore, Sonat concludes Falcon was to secure comprehensive general liability for all risks.

> 3. *Falcon was obligated to secure insurance covering all parties for all purposes.*

■ The Court agrees with Sonat. Section 14.1 requires Falcon to secure insurance to cover the risks assumed by both Falcon and Sonat, since both are risks "covered by this Contract." Falcon was to secure the policies listed in Exhibit "C" and Sonat was to be invoiced separately for the cost of insurance. Exhibit "C" requires Falcon to obtain general liability insurance with limits of $1,000,000 and "such insurance shall include ... Broad Form Contractual Liability insuring indemnity provisions contained in this Contract." This requires Falcon to insure *all* indemnity provisions contained in the Contract, not just those applicable to Falcon.

### C. Sonat Was Named As Additional Insured for All Purposes.

■ Falcon next argues there is no requirement that Falcon name Sonat as an additional insured for all purposes. Section 14.2 states Falcon shall have Sonat named as an additional insured "to the extent of liabilities assumed" by Falcon. Thus, Falcon's obligation to name Sonat as an additional insured was limited to Falcon's indemnification liability. To the contrary, Section 2 of Exhibit "C" requires Falcon to name Sonat as additional insured on all policies maintained by Falcon. That section does not contain the same limiting

language as contained in Section 14.2 of the Contract.

Section 14.1 of the Contract contains a broad requirement that Falcon obtain comprehensive general liability coverage listed in Exhibit "C". The farther reference to indemnification liability in Section 14.2 is a specific delineation that Falcon name Sonat as an additional insured on coverage insuring against the risks assumed by Falcon. It is not a limitation of Falcon's obligation to procure broad insurance coverage and to name Sonat as an additional insured on those policies. It is a requirement that the comprehensive general liability coverage required by Section 14.1 *include* coverage of the indemnification liabilities. See *Klepac v. Champlin Petroleum Company*, 842 F.2d 746, 748 (5th Cir. 1988), for example, where the court reached a similar conclusion:

> The further references to indemnification liability in sentence (2) do not make provision, as the district court apparently understood, for a separate insurance policy covering indemnification liability only. Instead, these further references serve to make clear that the comprehensive general liability insurance coverage established by sentence (1) "shall include" coverage of such indemnification liability,

*Klepac* at 748. While the contract in this case and in *Klepac* are not identical, the reasoning is the same. The obligation to secure general liability coverage is not limited by a provision requiring coverage of indemnification liability.

### D. Sonat Is Covered by the Additional Insured Endorsement

The Additional Insured Endorsement provides additional insured status to those who Falcon "is obligated by written contract" to name as additional insured. The endorsement reads, in part, as follows:

> It is further agreed that to the extent that the Named Assured is obligated by written contract to name any one person or organization as additional assureds hereunder, the Underwriters agree that such persons or company shall be considered as additional assureds but only with respect to operations performed by or on behalf of the Named Assureds.

In the previous discussion, the Court concluded that the Contract required Falcon to name Sonat as an additional insured for all purposes. Therefore, because the Contract requires Falcon to name Sonat as an additional insured, for purpose of the endorsement, Sonat is considered an insured. *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104 (5th Cir.1991).

Furthermore, the endorsement grants additional insured status "with respect to operations performed by or on behalf of the Named Insureds." Murphy alleges the rig on which he was injured was being operated by FDI. This constitutes operations being performed by a named insured. As such, there is coverage under both aspects of the endorsement.

### III. CONCLUSION

The Court grants Sonat's motion for summary judgment and denies FDI's motion for summary judgment. The Court enters a judgment accordingly.

### RULING ON MOTION FOR NEW TRIAL

Before the Court is a motion for new trial filed by defendants, Falcon Drilling Company, Inc. ("Falcon"), FDI Marine, Inc. ("FDI"), Falcon Services Company, Inc. of Delaware d/b/a/ Falcon Drilling Company, and their insurers. On September 23, 1999, this Court granted the motion for summary filed by plaintiff, Sonat Exploration Company, Inc. ("Sonat"), and denied the cross-motion for summary judgment filed by FDI.

### A. The Court maintains it original ruling that indemnity applies in excess of insurance coverage.

■ In this Court's original ruling on the cross-motions for summary judgment,

the Court found that insurance coverage was available through the policy identified as Cover Note No. ANR 5151. Relying on *Ogea v. Loffland Brothers Co.,* 622 F.2d 186 (5th Cir.1980), this Court further held that because insurance coverage is available, the indemnity obligations do not apply. Defendants, in their motion for new trial, point to the following provision in the contract:

> Notwithstanding said insurance provisions or any other provisions of this Contract, the parties hereto further agree that, as between each other, the liability for said risks shall be allocated in the following manner ...

(Offshore Drilling Contract, Section 13.1; hereinafter referred to as "Contract"). Defendants ask the Court reconsider its ruling on the cross-motions for summary judgment based on the language in Section 13.1 and their argument that indemnity applies "notwithstanding" the procurement of insurance.

Defendants contend that the Court mechanically applied the holding in *Ogea* to require the exhaustion of insurance over the application of the indemnity provisions. Defendants argue that *Ogea* requires that the indemnity and insurance provisions be read "in conjunction with each other in order to properly interpret the meaning of the contract." *Ogea* at 190, quoted in *Tullier v. Halliburton Geophysical Services, Inc.,* 81 F.3d 552 (5th Cir.1996). This Court agrees with defendants that a ruling must be based on a proper interpretation of the contract. The Court concludes, however, that its original ruling was not in error.

According to the contract, additional conditions must occur before the indemnity provisions become enforceable. Section 13.2 on Indemnities contains the following statement:

> However, neither the providing of insurance by each party, in accordance with the requirements hereof, nor the insolvency, bankruptcy, or failure of any insurance company carrying insurance of each party, nor the failure of any insurance company to pay any claim accruing, shall be held to waive any of the provisions of the Contract with respect to the liability of each party or otherwise. The providing of insurance shall not be construed to limit in any way the monetary amount of the indemnity provided for by each party under this Contract.

Sonat argues that since the insurers providing coverage for Murphy's accident remain solvent and the claim has not exceeded the policy limits, a claim for indemnity is premature.

The Court agrees with Sonat. In *Woods v. Dravo Basic Materials Co., Inc.* 887 F.2d 618 (5th Cir.1989), the Court gave the same interpretation to the indemnity provisions at issue in that case. The Court stated the following:

> The indemnity provisions would come into play if a claim arose out of the performance of the work that was in excess of the insurance coverage provided, or if the insurance carrier became insolvent. It is a common practice in the industry for the parties to contract to require insurance coverage for a portion of the risk and to provide for indemnity in excess of the insurance limits. See e.g. *Ogea v. Loffland Brothers Co.,* 622 F.2d 186 (5th Cir.1980).

Furthermore, Falcon and Sonat agreed that general liability coverage would include coverage for contractual indemnity. Section 14.1 of the Contract, Insurance Required, obligates Falcon to maintain "such insurance as will protect against all claims for damages, risks of loss, and contractual indemnities covered by this Contract." Also, Exhibit "C" of the Contract requires Falcon to maintain a general liability policy, which "shall include... Broad Form Contractual Liability insuring indemnity provisions contained in the Contract." Therefore, the policy that Falcon was obligated to obtain had to include coverage for contractual indemnity. Because the parties specifically agreed to

fund the indemnity liabilities with insurance in the manner stated, the most logical and reasonable interpretation of the contract is to apply the indemnity obligations in excess of insurance coverage.

### B. Falcon was obligated to obtain insurance for all parties and invoice Sonat separately for the entire cost of insurance.

The next argument set forth by defendants is that the policy at issue in this case insures Falcon, not Sonat. Falcon is under the misimpression that the contract required Sonat to purchase its own policy. The contract requires, however, that Falcon purchase the coverage for both parties, then invoice Sonat for the entire cost of the insurance.

The provisions quoted below supports this interpretation. Section 14.1 obligates Falcon to secure insurance covering all parties for all purposes:

Contractor shall maintain, the cost and expense of which shall be borne exclusively by and paid for by Company, such insurance as will protect against all claims for damages, risks of loss, and contractual indemnities covered by this Contract, and specifically agrees to secure policies, among others, and with minimum limits of coverage as provided in Exhibit "C" in companies satisfactory to Company.

Paragraph 1 of Exhibit "C" of the Contract states:

Contractor shall carry and maintain throughout the period of this contract, at Sonat Exploration Company ("Company") expense the minimum insurance coverage (shown below): Company shall be invoiced separately for the cost of insurance.

Among the coverage Falcon was required to carry and maintain was general liability insurance with a $1,000,000 combined single limit for bodily and property damage. That policy was also to include broad form contractual liability insuring indemnity provisions contained in the contract. Furthermore, Paragraph 2 of Exhibit "C" required Contractor to name Company as additional insured. These are the operative provisions requiring Falcon, not Sonat, to obtain the policies with coverage for all parties and to invoice Sonat for the entire cost of the insurance.

The arrangement outline by the above cited provisions explain why the contract also states that the insurance provisions inure to the benefit of Sonat without any corresponding provision running in defendants' favor. Since Falcon was to obtain the policies, it was understood by the parties that those policies also protected Sonat.

### CONCLUSION

For the reasons stated herein, the Motion for New Trial is DENIED.

IT IS SO ORDERED.