CHUTZ, J.
*189 Third-party plaintiff, Transcontinental Gas Pipe Line Company, LLC (Transco), appeals the trial court's judgment, dismissing without prejudice its third-party demand for declaratory relief against third-party defendant, The Gray Insurance Company (Gray). We maintain the appeal and reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
On October 8, 2015, an explosion occurred at the Transco facility located in Gibson, Louisiana. As a result, four individuals died, including two employees of Danos and Curole Marine Contractors, LLC (Danos) and two employees of Furmanite America, Inc. (Furmanite). At the time of the explosion, the Danos employees were performing work at the Transco facility under a request-for-service order issued by Transco to Danos pursuant to the General Service Agreement (GSA) into which they had entered. The Furmanite employees were performing work as a subcontractor to Danos under a request-for-service order issued by Danos pursuant to a Master Service Contract (MSC) into which it had entered with Furmanite. Several lawsuits, including this one by Sharon Dupre and Wilson Dupre, Jr., were subsequently filed against Transco, Danos, and Furmanite, among others, seeking damages as a result of the explosion.
In addition to answering the Dupres' lawsuit, Transco filed a third-party demand against Gray, seeking a declaration that Gray is obligated to defend and indemnify it under the contractual provisions of the insurance issued to Danos for which Transco was a named "additional insured" pursuant to the GSA. Gray filed various peremptory exceptions as well as a dilatory exception objecting on the basis of prematurity. After a hearing, the trial court issued a judgment dismissing Transco's claims without prejudice. This appeal by Transco followed.[1]
DISCUSSION
The following facts are undisputed. After execution of the GSA, Danos hired Furmanite as a subcontractor and they entered into the MSC. Both the GSA and the MSC required that Transco be endorsed as an additional insured under insurance policies obtained by Danos and *190 Furmanite respectively. Under the GSA, Danos obtained insurance from Gray and Transco was named as an additional insured. Under the MSC, Furnamite obtained insurance with ACE American Insurance Company and Commerce and Industry Insurance Company, naming Transco, Danos, and Gray as additional insureds. The policies obtained under the GSA and MSC were in effect on the date of the explosion.
Gray avers that under the provisions of the GSA entered into between Transco and Danos, and those of the MSC subsequently executed between Danos and Furmanite, the Furmanite insurers are the primary insurers available to Transco against the claims of the Dupres (and the others who have instituted litigation against Transco as a result of the October 8, 2015 explosion). Thus, Gray avers that Transco is required to seek a defense and utilize the proceeds available from Furmanite's insurers before Gray is obligated to perform under the insurance issued to Danos with Transco as a named additional insured. As such, Gray maintains that the trial court correctly concluded Transco's claims for declaratory relief were premature and properly dismissed without prejudice.[2]
La. C.C.P. art. 926A(1) provides for the dilatory exception raising the objection of prematurity. Such an objection is intended to retard the progress of the action, rather than to defeat it. La. C.C.P. art. 923. An action is premature if it is brought before the right to enforce the claim sued on has accrued. See La. C.C.P. art. 423. The objection of prematurity raises the issue of whether the judicial right of action has yet come into existence because some prerequisite condition has not been fulfilled. Prematurity is determined by the facts existing at the time suit is filed. It's Golden, LLC v. Watercolors Unit 6, LLC , 2016-1362 (La. App. 1st Cir. 6/2/17), 223 So.3d 545, 547.
Without asserting that either the GSA or the MSC is ambiguous, both Transco and Gray point to contractual provisions to support their contentions regarding Transco's intent. Thus, resolution of the issues presented for our review depends on a determination of the nature and effect of the agreements executed by the parties, and the proper interpretation of a contract is a question of law subject to de novo review on appeal. Montz v. Theard , 2001-0768 (La. App. 1st Cir. 2/27/02), 818 So.2d 181, 185.[3]
*191 According to the salient provisions of the GSA between Transco and Danos:
[Danos] shall maintain insurance as indicated in Exhibit C.... [Danos] shall be fully responsible to [Transco] for any deficiencies in [Danos's] and [Danos's subcontractor's] insurance....
Exhibit C of the GSA states the following:
[Danos] will carry or cause to be carried and maintained in force ... insurance described below.... All policies providing the required insurance ... shall be endorsed to include [Transco and its agents] as additional insured and these policies will be primary to any other insurance available to [Transco and its agents]....
If [Danos] hires a subcontractor to perform any portion of the Work, [Danos] warrants that the subcontractor will obtain insurance meeting
the insurance requirements of this Agreement and applicable to the subcontracted work, with the types and limits required by [Transco].... [Danos] shall defend (at [Transco's] options), indemnify, and hold harmless [Transco and its agents] from or against any Claims asserted or arising as a result of [any] deficiency [in insurance].
Lastly, the GSA expressly states at paragraph 13:
[Danos] may not assign or subcontract this Agreement ... in whole or in part without [Transco's] prior written consent.... No assignment or subcontract shall relieve [Danos] of its obligations under this Agreement.
Thus, according to Transco, Danos was required to obtain insurance and, under the terms of the GSA, that insurance was contractually deemed primary to any other insurance that is available. Moreover, Transco asserts that Danos could not unilaterally alter these terms of the GSA when it contracted the MSC with Furmanite under the language of paragraph 13 of the GSA. We agree.
Gray's entire contention that it is an excess insurer to the insurance provided by Furmanite is premised on the conclusion that "Transco clearly wanted to add layers of insurance protection between itself and the work being done." Gray has not pointed to any language in the GSA which mandates that Danos "add layers of insurance protection." Instead, our review shows that the GSA states that if Danos hired a subcontractor, as it did with Furmanite, "[Danos] warrants that the subcontractor will obtain insurance meeting the insurance requirements of this Agreement." (Emphasis added.) This provision is merely a risk-shifting stipulation, which is evinced by the subsequent language, i.e., that "[Danos] shall defend (at [Transco's] options), indemnify, and hold harmless [Transco and its agents] from or against any Claims asserted or arising as a result of [any] deficiency [in insurance]." In other words, the failure of Danos to ensure that the requisite insurance was obtained by its subcontractors would result in an assumption of liability by Danos for the insurance deficiency. Here, there is no deficiency in Furmanite's fulfillment of its insurance obligation to Danos and, hence, there is no claim by Transco for indemnity against Danos as a result of an insurance deficiency by Furmanite. More importantly, Transco has shown by the salient provisions of the GSA that it was Transco's intent that Danos would procure insurance for which Transco would be a named additional insured.
In reaching its conclusion that Transco's claim for declaratory relief against Gray was premature because the coverage provided by Furmanite's insurers primed Gray's, the trial court relied on provisions in the MSC between Danos and Furmanite, which stated:
*192 Coverage under all insurance that is required to be carried by [Furmanite] shall be primary insurance and exclusive of any other existing valid and [collectible] Insurance coverage available to any member of [Danos, the Insurers of Danos, and Transco].
Because the GSA stated, "No ... subcontract shall relieve [Danos] of its obligations under this Agreement," and under the provisions of the GSA, "[Danos] will carry ... insurance" which "shall be endorsed to include [Transco and its agents] as additional insured and these policies will be primary to any other insurance available to [Transco and its agents]," the terms of the MSC stating that the Furmanite insurance "shall be primary insurance and exclusive of any other existing valid and [collectible] Insurance coverage," including that available to Transco, simply were inapplicable to Transco, who was not a party to the MSC. See La. C.C. art. 1983 (contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law).[4] Thus, while the provisions of the MSC may have shown the intent of Danos and Furmanite to procure insurance in which Transco was named an additional insured, that contract did not provide any insight into Transco's intent.
The trial court's reliance on Ogea v. Loffland Bros. Co. , 622 F.2d 186 (5th Cir. 1980), and subsequent cases that rely on its holding, to conclude that the Furmanite insurance primed Gray's is misplaced. It is true, as Gray points out, that the Ogea court determined that in a contract in which indemnity and insurance obligations are owed, to harmonize the provisions, fulfillment of the insurance obligations must precede the performance of the indemnity obligations. Here, however, Transco does not seek to enforce its indemnity provisions against Danos. Ogea , 622 F.2d at 190. Transco merely asks that Gray perform its obligations under the insurance it issued to Danos for which it is undisputed that Transco is a named additional insured.
Because the provisions of the MSC are inapplicable and, under the plain language of the GSA, Danos was required to, and did, obtain insurance from Gray in which Transco was a named additional insured, Gray's insurance was "primary to any other insurance available to [Transco and its agents]." Therefore, Gray's insurance is not excess to that of the Furmanite insurers, and Transco's third-party demand seeking a declaration that Gray is obligated to defend and indemnify in accordance with the insurance Gray issued to Danos for which Transco is a named additional insured is not premature.[5]
DECREE
Because the trial court's judgment dismissing Transco's third-party demand for declaratory relief is a final judgment, the *193 appeal is maintained. That portion of the trial court's judgment dismissing Transco's demand without prejudice is reversed.[6] The matter is remanded for further proceedings. Appeal costs are assessed against The Gray Insurance Company.
APPEAL MAINTAINED. REVERSED AND REMANDED.

Because the appealed judgment dismisses all of Transco's claims against Gray, it is a final judgment under La. C.C.P. art. 1915A(1). Therefore, the appeal is maintained.

Gray filed peremptory exceptions raising objections of no right of action, no cause of action, and nonjoinder of parties required for a just adjudication. Gray averred that Transco had no right of action and no cause of action against it because as an excess insurer, it was not liable for any claims against Transco until after the Furmanite insurers' policies were applied and expended. Gray also contended that since it was an excess insurer, a just adjudication of Transco's claims for declaratory relief required joinder of Furmanite's insurers as parties under La. C.C.P. art. 641. Thus, the underlying bases for all of these peremptory exceptions are that Transco's right to enforce its claims for declaratory relief against Gray is premature because Gray is an excess insurer. As such, our appellate review focuses on the propriety of the trial court's action of sustaining the objection of prematurity as well as its dismissal, without prejudice, of Transco's declaratory action against Gray.

Although Transco posits that the result is the same under either the laws of Louisiana or Texas, we note that because the GSA expressly states, "The laws of the State of Texas ... shall govern this Agreement," under Texas law the interpretation of an unambiguous contract is a question of law for the court. Moayedi v. Interstate 35/Chisam Rd., L.P., 438 S.W.3d 1, 7 (Tex. 2014).

See also Mendivil v. Zanios Foods, Inc., 357 S.W.3d 827, 830-31 (Tex. App. 2012) (the elements required for the formation of a valid and binding contract include: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding).

We note that neither Transco nor Gray admitted any insurance policies into evidence. Thus, based on the allegations of Transco's petition, we cannot determine what, if any, relationship exists between Gray and the Furmanite insurers. As pleaded, see It's Golden, LLC , 223 So.3d at 547 (if no evidence is presented at trial, the court must render its decision based on the facts alleged in the petition with all allegations therein being accepted as true), the Furmanite insurers are not parties required for a just adjudication under La. C.C.P. art. 641.

Transco also filed a cross-claim against Danos, seeking declaratory relief, averring entitlement to a declaration that the GSA obligated Danos to defend and indemnify Transco from the lawsuits filed by the Dupres and others. The trial court's dismissal without prejudice of the cross-claim by Transco against Danos was not appealed.