## AUTOBOND ACCEPTANCE CORPORATION, Appellant,

v.

## PROGRESSIVE NORTHERN INSURANCE COMPANY and United Financial Casualty Company, Appellees.

No. 14–00–01075–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 21, 2002.

Rehearing Overruled April 4, 2002.

cising ordinary care").

Nancy Kramer Strong, Jett Williams, III, John L. McConn, Jeffrey S. Johnston, Houston, for appellants.

Reagan M. Brown, Katherine D. Mackillop, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Autobond Acceptance Corporation appeals a judgment in favor of Progressive Northern Insurance Company and United Financial Casualty Company on the following grounds: (1) the trial court erred in failing to find as a matter of law that the insurance policy could not be cancelled and the aggregate limit of liability was eighty-eight percent of inception-to-date premium paid and (2) the trial court erred in submitting the question of comparative negligence to the jury.

## Background

Appellant, Autobond Acceptance Corporation, provides investments in the form of securitization of sub-prime automobile loans. Autobond purchased loans from automobile dealers who issued loans to customers who could not obtain conventional financing. Autobond then bundled the loans into securitization transactions and issued bonds on the loans. In 1997, Autobond completed two securitization transactions known as the "1997–B" and "1997–C" transactions. Autobond sought two types of insurance protection from appellees, Progressive Insurance. Both types of insurance were triggered when Autobond repossessed a vehicle after the purchaser defaulted on the loan. The physical damages coverage insured against any physical damage incurred on the vehicle. The deficiency balance endorsement covered the balance of the loan after the repossessed vehicle was sold at auction.

After extended negotiation, Progressive provided coverage through a Blanket Vendors' Single Interest (BVSI) policy for physical damage coverage with a deficiency balance endorsement. Progressive initially offered Autobond a policy that could be cancelled for all loans, but would allow life of the loan coverage for an additional premium. Autobond did not accept that proposal. Autobond also sought a policy without an overall limit. Because of the risk associated with the sub-prime finance market, Progressive would not issue a policy without certain language limiting its liability. Autobond and Progressive reached a compromise with an aggregate limit of liability endorsement, which made eighty-eight percent of the premium paid to Progressive available to pay claims.

Based in part on the insurance coverage, Fitch and Moody's Investment Services issued favorable investment ratings on the 1997–B and 1997–C transactions.

Approximately six months after the bonds were issued, Fitch and Moody's downgraded the investment ratings on the 1997–B and 1997–C transactions. Appellant contends the downgrade stemmed from Fitch and Moody's concern about the cancellation clause and the aggregate limit of liability contained in the insurance policy. The cancellation clause stated as follows:

> YOU [Autobond] may cancel this Policy by surrendering it to U.S. [Progressive] or OUR authorized agent or by mailing notice to U.S. of the cancellation. WE may cancel this Policy by mailing to YOUR last mailing address known to U.S. written notice stating when, not less than thirty (30) days from notice, cancellation will be in effect. If YOU are delinquent in the payment of premium, no less than ten (10) days notice shall be required before cancellation. The effective date in the notice shall become the end of the policy period. WE will give YOU the reason for cancellation. Notices shall be sent by certified mail. In the event of cancellation of this Policy, for whatever reason, it is agreed that WE shall have no further liability under this Policy for losses for which the Date of Loss occurs on or after the effective date of cancellation.

The aggregate limit of liability endorsement stated as follows:

> In consideration of a reduction of premium, it is agreed between YOU and U.S. that for any calendar month ("Period"), OUR Aggregate Limit of Liability shall not exceed 88% of premium paid. "Aggregate Limit of Liability" means the total of all claims paid under the Blanket Vendors' Single Interest ("BVSI") policy for the Period in question.

Progressive construed the above clauses to mean the BVSI policy, including the deficiency balance endorsement, could be cancelled on thirty days' written notice to Autobond. Further, Progressive maintained that its aggregate limit of liability was eighty-eight percent of the premium paid each month by Autobond. In April 1998, Progressive cancelled the policy pursuant to the cancellation clause.

Autobond contends Progressive's interpretation of the policies caused Fitch and Moody's to downgrade its bonds, resulting in the destruction of Autobond's business. The jury found that Progressive complied with the insurance contract and did not violate the Deceptive Trade Practices Act or the duty of good faith and fair dealing. The jury further found that Progressive did not commit fraud. Autobond moved for a judgment notwithstanding the verdict claiming, *inter alia,* that the deficiency balance policy as a matter of law could not be cancelled, and that the aggregate limit of liability applied to premium paid inception-to-date instead of monthly premium paid. The trial court denied Autobond's motion and entered a take nothing judgment.

### Issues

Autobond raises the following issues: (1) the trial court erred in submitting the issue of Progressive's compliance with the contract to the jury because the cancellation clause in the contract was unambiguous and the deficiency balance endorsement could not be cancelled as a matter of law; (2) the cancellation clause was ambiguous and the trial court should have construed the contract in its favor because an ambiguous insurance policy should be construed in favor of the insured; (3) Progressive could not cancel the policy as a matter

of law because it did not tender or refund any unearned premium; (4) the trial court erred in submitting the question of comparative negligence to the jury; (5) the aggregate limit of liability endorsement must be construed as reducing liability based on inception-to-date premium paid; and (6) alternatively, the aggregate limit of liability endorsement is ambiguous and should be construed in its favor.

## Analysis: Issues One and Two

### Cancellation of Deficiency Balance Coverage

█ In its first two issues, Autobond claims the trial court erred in submitting the question of Progressive's compliance with the contract to the jury and in failing to find, as a matter of law, that the deficiency balance endorsement contained a material ambiguity regarding cancellation that should have been construed against Progressive. Several rules of construction guide our consideration of these issues. First, insurance policies are subject to the same rules of construction as other contracts. *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex.1995). The primary concern of the court is to ascertain the true intent of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). That the parties advance conflicting interpretations of the contract does not make it ambiguous. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d at 134. But if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997).

We must read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998). While extrinsic evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). When a contract is unambiguous, the rule of construing a contract against its drafter does not apply. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 290 (Tex.App.-Houston [1st Dist.] 1997, writ denied). A trial court errs when it does not construe an unambiguous provision as a matter of law, and instead submits the issue to a fact finder. *Id.*

█ Here, the policy unambiguously provides that Progressive can cancel the contract with thirty days' notice to Autobond. Autobond argues that the cancellation provision found in the BVSI policy applies only to the property damage section of the policy, not the deficiency balance endorsement. To the contrary, the policy contains the following integration language:

> ENTIRE CONTRACT—CHANGES: This Policy, including the attached endorsements, if any, constitutes the entire contract. No change in the Policy shall be valid unless approved by an officer of OUR Company and such approval is endorsed or attached to the Policy.

The above clause unambiguously provides that the deficiency balance endorsement is a part of the BVSI policy and is therefore subject to the cancellation clause in that policy.

Autobond next argues that an exclusion found in the deficiency balance endorsement supports its construction. The endorsement merely provides that the deficiency balance coverage is not available if coverage is available under the property damage section of the policy. This language does not alter the cancellation clause; it merely ensures there will be no duplicative coverage under the policy. Autobond further argues that although Progressive cancelled the policy, it is obligated to provide coverage for loans for which premium has been paid. The cancellation clause provides, however, that Progressive has no liability for losses that occur after the date of cancellation. Progressive fully complied with the policy with regard to cancellation. Accordingly, we overrule issues one and two.

### Analysis: Issue Three

### Unearned Premium

In its third issue, Autobond contends the trial court erred in submitting jury questions pertaining to Progressive's compliance with the contract because Progressive could not, as a matter of law, effectively cancel the policy without refunding unearned premium. Autobond does not request the return of unearned premium, but challenges Progressive's ability to cancel the contract without tendering or refunding unearned premium.

Appellant cites several Texas decisions that hold return of premium is a condition precedent to cancellation. *See, e.g. Anchor Cas. Co. v. Crisp*, 346 S.W.2d 364 (Tex.Civ. App.-Amarillo 1961, no writ); *Southwestern Fire & Cas. Co. v. Bendel*, 321 S.W.2d 183 (Tex.Civ.App.-Dallas 1959, no writ); *Langdeau v. Piske*, 317 S.W.2d 806 (Tex. Civ.App.-Austin 1958, writ ref'd n.r.e.). In the cases cited by Autobond, the policies contained specific provisions regarding return of unearned premium. Unlike policies in those cases, the policy here expressly provided for cancellation on thirty days' written notice and contained no provision concerning tender or return of unearned premium. The decisions cited by appellant represent merely a rule of construction stating that a cancellation clause must be strictly construed. *See Hartford Accident and Indem. Co. v. Swilley*, 304 F.2d 213, 216 (5th Cir.1962). Under the terms of the contract, Progressive met all conditions precedent to cancellation. Therefore, the issue of whether Progressive's premium was earned is immaterial.

The contract itself sets the terms for refund to Autobond in the Reserve Fund Endorsement. This endorsement provided that when losses incurred for the month were less than eighty-eight percent of earned premium for the month, the remaining amount would be deposited into a reserve fund. Upon cancellation of the policy, the balance of the reserve fund account was available to pay claims or to be refunded to Autobond. It is undisputed that because of the number of claims made in this case, the Reserve Fund was exhausted. Therefore, appellant's third issue is overruled.

### Analysis: Issue Four

### Comparative Negligence

In its fourth issue, Autobond contends the trial court erred in submitting questions eleven and twelve to the jury because negligence is not a defense to breach of contract. In question eleven, the jury was asked whether the negligence of Autobond or the intervenors proximately caused the occurrence in question. In question twelve, the jury was asked to assign percentages to the parties whose negligence proximately caused the damage. The comparative negligence issues were submitted as a defense to other causes of

actions raised by Autobond at trial. Because Autobond did not appeal the jury's findings on those causes of action, the submission of the comparative negligence issue is immaterial to this appeal. Appellant's fourth issue is overruled.

### Analysis: Issues Five and Six

### Aggregate Limit of Liability

 In its fifth and sixth issues, Autobond contends the trial court erred in not finding as a matter of law that the deficiency balance policy had a monthly limit of liability of eighty-eight percent of inception-to-date premium paid. In the alternative, Autobond argues the aggregate limit of liability language is ambiguous, and thus should be construed in its favor. The Aggregate Limit of Liability endorsement provides, in part:

> In consideration of a reduction of premium, it is agreed between YOU and U.S. that for any calendar month ("Period"), OUR Aggregate Limit of Liability shall not exceed 88% of premium paid. "Aggregate Limit of Liability" means the total of all claims paid under the Blanket Vendors' Single Interest ("BVSI") policy for the Period in question.

Autobond argues that the aggregate limit of liability reduces Progressive's liability to eighty-eight percent of the premiums paid from the inception of the insurance policy to the date of loss. Progressive argues that its liability is limited to eighty-eight percent of the premium paid by Autobond each month. A plain reading of the aggregate limit of liability clause reveals that the phrase "for any calendar month" modifies both "Aggregate Limit of Liability" and "88% of premium paid." Further, when the policy is read as a whole, we must consider the Reserve Fund endorsement, which provides that a reserve fund will be funded on a calendar month basis when incurred losses for the

calendar month are less than eighty-eight percent of the earned premium for the same month. If we adopt Autobond's construction, the Aggregate Limit of Liability Endorsement and the Reserve Fund Endorsement would conflict. *See Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 605 (1959) ("It is our duty to harmonize all of the provisions of a contract wherever that is possible."). After considering the policy as a whole, we find no ambiguity in the aggregate limit of liability endorsement. Therefore, Progressive's liability is limited to eighty-eight percent of the premium paid each month under the policy.

### Conclusion

 The policy unambiguously provided that Progressive was entitled to cancel the policy on thirty days' notice and that by cancelling the policy it was not liable for losses that occurred after the date of cancellation. Further, the aggregate limit of liability endorsement is unambiguously provides that Progressive's limit of liability is eighty-eight percent of the premium paid each month. Because the contract is not ambiguous, the trial court erred in submitting the issue of ambiguity to the jury. *See GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d at 290. The jury, however, found that Progressive complied with the policy. Based on that finding, the trial court entered a take-nothing judgment. Therefore, despite the erroneous jury submission, the trial court did not err in its judgment. Accordingly, we overrule all issues presented and affirm the judgment of the trial court.