Affirmed and Opinion filed March 16, 2004









Affirmed and Opinion filed March 16, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00285-CV

____________

 

NABORS
CORPORATE SERVICES, INC. 

F/K/A POOL OFFSHORE SERVICES, Appellant

 

V.

 

NORTHFIELD
INSURANCE COMPANY, Appellee

 



 

On Appeal from the 157th District Court 

Harris County, Texas

Trial Court Cause No. 02-20237

 



 

O P I N I O N








In this declaratory judgment action, Pool Company Texas,
Ltd.,[1]
(APool@) appeals the trial court=s grant of summary judgment
dismissing Pool=s claims against Abraxas Petroleum Corporation (AAbraxas@) and Northfield Insurance Company (ANorthfield@). 
Specifically, Pool contends that: (1) the indemnity provision contained
in the Master Service Agreement between Abraxas and Pool was void under the
Texas Oilfield Anti-Indemnity Act (ATOAIA@);[2]
and (2) because Abraxas failed to request reimbursement from Northfield under
the Texas Property and Casualty Insurance and Guaranty Act (ATPCIGA@),[3]
Pool paid a debt owed by Abraxas or Northfield and should be reimbursed.  We affirm. 


I. 
Statement of Facts and Procedural Background

In 1997, Abraxas hired Pool to perform work on an oil and gas
lease owned and operated by Abraxas.  As
is customary in the oil and gas industry, Abraxas and Pool entered into a
Master Service Agreement (the AAgreement@) which contained, in part, mutual indemnity provisions
whereby each party agreed to indemnify the other for any claims or causes of
action, without limit, for any injuries or death suffered by their respective
employees.  In the Agreement, each party
also agreed to acquire insurance to cover these indemnity obligations[4]
in accordance with the safe harbor provisions of the TOAIA.[5]   Pool=s general liability insurer was
Reliance Insurance Company (AReliance@)[6]
and Abraxas was insured by Northfield.








In 1999, a Pool employee, Michael Carter, was fatally
injured.  Carter=s heirs and estate filed suit (the ACarter litigation@) against Abraxas, and other
defendants not parties to this appeal, asserting negligence claims.  When Abraxas presented the claim to
Northfield, Northfield hired counsel to represent Abraxas; counsel, in turn,
contacted Pool and demanded Pool defend and indemnify Abraxas in accordance
with the Agreement.  Pool agreed, subject
to its right under Texas law to deny indemnification for any grossly negligent
conduct by Abraxas or any award for punitive damages.  Pool then hired counsel to defend
Abraxas.  

In September 2001, the Carter litigation was settled on
behalf of Abraxas for $1,545,000.[7]  However, prior to funding the settlement,
Pool=s insurer, Reliance, became
insolvent.[8]  Suit was filed by the Carter plaintiffs
against Abraxas to enforce the settlement agreement, and Abraxas looked to Pool
by virtue of the indemnity provision contained in the Agreement.  Pool contributed $1,000,000 to the settlement
by Abraxas, reserving all rights and causes of action, then demanded
reimbursement from Northfield. 
Consequently, Northfield filed this declaratory judgment action,
asserting it did not owe any reimbursement to Pool.  Pool filed counterclaims against Northfield
and third-party claims against Abraxas,[9]
alleging both parties had violated the TPCIGA and asserting claims for
indemnity and unjust enrichment against both parties.  Northfield filed a AMotion to Dismiss and/or Summary
Judgment,@ requesting the trial court dismiss
Pool=s claims against Abraxas and Abraxas=s claims against Northfield in the
event Abraxas should be held liable to Pool for any reimbursement.  

The trial court signed a final judgment granting Northfield=s motion and (1) dismissing with
prejudice, Pool=s claims against Abraxas and Northfield; (2) dismissing
without prejudice, Abraxas=s counterclaims against Pool; and (3) dismissing as moot,
Abraxas=s cross-claims for reimbursement
against Northfield.  The trial court
severed all other remaining claims to permit appeal of the judgment.  








II. 
Analysis 

A. Abraxas as Appellee

As an initial matter, Abraxas asserts it is an appellee in this
proceeding and requests that we accept its brief as such.  Abraxas argues it falls within the definition
of Aappellee@ as that term is defined in Texas
Rule of Appellate Procedure 3.1(c) because it is adverse to Pool and to
Northfield and its direct interests are affected by the outcome of this
appeal.  Pool and Northfield do not
contend that Abraxas is not a proper party to this appeal or otherwise contest
Abraxas=s participation.[10]    

Rule of Appellate Procedure 3.1 defines an appellee as Aa party adverse to an appellant.@ 
Tex. R. App. P. 3.1(c).  Here, the trial court=s final judgment dismissed Pool=s third-party claims against Abraxas,
dismissed Abraxas=s original counterclaims against Pool, and dismissed Abraxas=s cross-claims against Northfield.  The final judgment then places Abraxas in a
position on appeal that is adverse to Pool and directly impacts Abraxas=s interests in the case.  We conclude Abraxas falls within the
definition of appellee contained in Rule 3.1 and thus, may participate in this
appeal.[11]  Accord Gray v. Allen, 41 S.W.3d 330,
331 (Tex. App.CFort Worth 2001, no pet.) (noting
that an appellee was not a proper party because the trial court did not render
judgment against her and the appellant had not raised any issues on appeal
involving her).  








B.  Standard of Review

Although Northfield=s motion was entitled AMotion to Dismiss and/or Summary
Judgment,@ in the motion Northfield primarily
argued that there was no evidence to support Pool=s claims.  Also, it appears the court=s judgment was rendered based on
evidence outside the pleadings. 
Therefore, we construe Northfield=s motion as a no-evidence summary
judgment motion and review it using a no-evidence summary judgment
standard.  See, e.g., Marts ex
rel. Marts v. Transp. Ins. Co., 111 S.W.3d 699, 702 (Tex. App.CFort Worth 2003, pet. denied).

After an adequate time for discovery, a party may move for
summary judgment on the basis that there is no evidence of an essential element
of the nonmovant=s cause of action.  Tex. R. Civ. P. 166a(i).  The motion must state the elements for which
there is no evidence.  Id.; Marts,
111 S.W.3d at 703.  To defeat a no‑evidence
summary judgment motion, a party need only point out evidence that raises a
genuine issue of material fact on the challenged elements.  Tex.
R. Civ. P. 166a(i) cmt.; Russo v. Smith Int=l, Inc., 93 S.W.3d 428, 433 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  We review the evidence in the
light most favorable to the non-movant, disregarding all contrary evidence and
inferences, and sustain the judgment if (1) there is a complete absence of
proof of a vital fact; (2) rules of law or evidence bar the court from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a scintilla; or (4) the evidence
conclusively establishes the opposite of a vital fact.  Coastal Conduit & Ditching, Inc. v.
Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th Dist.] 2000, no pet.).

C.  Assignment of Error


We begin our analysis by addressing Abraxas=s and Northfield=s argument that Pool did not assign
error based on its unjust enrichment claim and, therefore, we must affirm the
trial court=s ruling on this ground.








When a trial court=s summary judgment rests upon more
than one independent ground, as the judgment does here, the aggrieved party
must assign error to each ground or the judgment will be affirmed on any ground
not complained of.  Williamson v.
State Farm Lloyds, 76 S.W.3d 64, 67 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  However, the statement of an
issue or point in an appellate brief is treated as covering every subsidiary
question fairly included within that issue.  Tex. R.
App. P. 38.1(e).  An issue is
sufficient if it directs the appellate court=s attention to the error complained
of.  Tex. Mexican Ry. Co. v. Bouchet,
963 S.W.2d 52, 54 (Tex. 1998); Stephenson v. LeBoeuf, 16 S.W.3d 829, 843
(Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  Further, appeals should be
judged on the merits of the controversies fairly presented rather than on
hyper-technical waiver issues.  Stephenson,
16 S.W.3d at 843B44.  

In its appellate brief, Pool
argued in part that the
indemnity provision at issue was void under the TOAIA.  In summation of its argument, Pool stated
that because the indemnity provision was invalid, it was entitled to
reimbursement based on the theories of Aeither legal indemnity (equitable
subrogation) or unjust enrichment (quantum meruit).@ 
In addition, responding to Northfield=s and Abraxas=s waiver argument, Pool asserted
that: (1) Northfield had specifically argued in its motion that Pool=s equitable claims were negated by
the contractual indemnity provision, thus prompting Pool=s argument in its original brief; and
(2) Pool=s equitable claims stemmed from the
purported invalidity of the indemnity provision.  Pool=s statements sufficiently direct our
attention to its argument on appeal, that its equitable claims survived
Northfield=s motion due to the invalidity of the
contractual indemnity provision.  We
decline to affirm the judgment based on the technical briefing deficiency
argued by Abraxas and Northfield and, accordingly, address Pool=s issues.  

C.  Texas Oilfield
Anti-Indemnity Act








In its first issue, Pool argues the trial court erred in
granting Northfield=s motion because once Reliance was placed into receivership,
there was no longer any supporting insurance coverage and the indemnity
provision contained in the Agreement was rendered void under the TOAIA.[12]   Pool reasons that because the purpose behind
the TOAIA is to protect contractors from unfair indemnity obligations, and Pool
was no longer protected due to Reliance=s insolvency, the TOAIA serves to
invalidate the indemnity provision.  In
support of its contentions, Pool relies solely on the provisions of the TOAIA
and thus, we construe that statute.

In construing a statute, our objective is to determine and
give effect to the Legislature=s intent.  City of
San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003); Guthery v.
Taylor, 112 S.W.3d 715, 721B22 (Tex. App.CHouston [14th Dist.] 2003, no pet.); see also Tex. Gov=t Code ' 312.005.  If possible, we must ascertain the
Legislature=s intent from the language of the
statute and not resort to extraneous matters for an intent not stated in the
statute.  Guthery, 112 S.W.3d at
722.  We look first to the Aplain and common meaning of the
statute=s words,@ presuming the Legislature intended
the plain meaning of those words used.  City
of San Antonio, 111 S.W.3d at 25; Tex‑Air Helicopters, Inc. v.
Galveston County Appraisal Review Bd., 76 S.W.3d 575, 581 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  Also, we determine legislative
intent from the entire act, not just its isolated portions, and read the
statute as a whole, interpreting it to give effect to every part.  City of San Antonio, 111 S.W.3d at 25.









In 1973, the TOAIA was enacted because oil and gas
contractors agreeing to indemnify operators had encountered difficulties in
obtaining insurance to cover liabilities that might arise from the indemnity
obligations.  Ken Petroleum Corp. v.
Questor Drilling Corp., 24 S.W.3d 344, 348 (Tex. 2000).  As a result, those contractors were subjected
to substantial liabilities with no means of insuring against those
obligations.  Id.  To address this, the Legislature found that Aan inequity is fostered on certain
contractors by the indemnity provisions in certain agreements pertaining to
wells for oil, gas, or water or to mines for other minerals@ and determined that certain
agreements providing for Aindemnification of a negligent indemnitee are against the
public policy of this state.@  Tex. Civ. Prac. & Rem. Code '' 127.002 (a)B(b); see id. ' 127.003 (A[A] covenant, promise, agreement . .
. affecting an agreement pertaining to a well for oil [or] gas, . . . is void
if it purports to indemnify a person against loss or liability for damage@ arising from personal injury or
death); Ken Petroleum, 24 S.W.3d at 349.

However, not all indemnity agreements in the oil and gas
industry are void.  Specifically, an
indemnity agreement wherein Athe parties agree in writing that the indemnity obligation
will be supported by liability insurance coverage to be furnished by the
indemnitor,@ is excluded from the purview of the
TOAIA.[13]  Tex.
Civ. Prac. & Rem. Code ' 127.005(a).  Only agreements falling outside of this
exclusion are void.  Ken Petroleum,
24 S.W.3d at 349.  








The plain language of the statute does not support Pool=s argument.  To fall within the TOAIA exclusion under
section 127.005, the parties need only Aagree in writing that the indemnity
obligation will be supported by liability insurance coverage to be furnished
by the indemnitor . . . .@  Tex. Civ. Prac. & Rem. Code ' 127.005(a) (emphasis added).  Thus, once the parties execute the applicable
agreement, the TOAIA exception applies.  Maxus
Exploration Co. v. Moran Bros., 773 S.W.2d 358, 361 n.3 (Tex. App.CDallas 1989), aff=d in part, rev=d in part, 817 S.W.2d 50 (Tex. 1991)
(addressing an issue of Aself-insurance@ under the TOAIA, noting the statute
requires only that there be a written agreement that insurance coverage will
be provided, and that the statute does not serve to void an indemnity
provision if the coverage does not in fact exist); see Ken Petroleum, 24
S.W.3d at 351 (finding that section 127.005 only requires a writing to
memorialize that each party has agreed to provide insurance to support the
indemnity obligations); see also Boyd v. Amoco Prod. Co., 786 S.W.2d
528, 531 (Tex. App.CEastland 1990, no writ) (construing an oil and gas well
contract and concluding that Acurrent liability insurance@ referred to insurance on the date of
injury).  Once an agreement falls within
the statute=s exception, there is no language in
the TOAIA which would retroactively void the agreement.  Thus, once Pool and Abraxas agreed in writing
that the indemnities would be supported by insurance, they complied with the
safe harbor provisions of the TOAIA.[14]

The words in the statute Awill be supported@ and Ato be furnished@ suggest the Legislature did not
intend the TOAIA govern all aspects of the underlying insurance or void
indemnity agreements should the underlying insurance fail.  Instead, these words suggest that the
Legislature intended the parties= indemnity obligations and the
underlying insurance be controlled by the terms of the parties= written agreements.  Details regarding insurance requirementsCother than minimum amountsCand contracting for risks associated
with those requirements are matters that presumably would be addressed through
negotiations between the parties. 
Moreover, if the Legislature had intended to invalidate indemnity
provisions because of an insurer=s subsequent insolvency, it easily
could have done so by inserting a provision to that effect. 








Here, as Pool acknowledges, there are a number of provisions
within the Agreement which govern the underlying insurance.  For example, under paragraph 13 of the
Agreement, entitled AInsurance,@ Pool agreed to Asecure and maintain during the term
of this agreement the insurance in the types and amounts . . . as shown in
Exhibit A, with companies satisfactory to [Abraxas]@ and further provided that Pool would
furnish certificates of said insurance. 
Also in that paragraph, boxed off and in bold letters, was the
following:

IF OPERATIONS ARE PERFORMED IN TEXAS OR UNDER TEXAS
LAW, BOTH PARTIES AGREE THAT: 

IN ORDER TO BE IN COMPLIANCE WITH THE [TOAIA]
REGARDING INDEMNIFICATION MUTUALLY ASSUMED FOR THE OTHER PARTY=S SOLE OR CONCURRENT NEGLIGENCE, EACH PARTY AGREES TO
CARRY SUPPORTING INSURANCE IN EQUAL AMOUNTS OF THE TYPES AND IN THE MINIMUM
AMOUNTS AS SPECIFIED IN THE INSURANCE REQUIREMENTS HEREUNDER; AND EACH PARTY
AGREES THAT THE MAXIMUM AMOUNT OF SUCH SUPPORTING INSURANCE CARRIED IN EQUAL
AMOUNTS SHALL BE THE LOWER OF THE MAXIMUM AMOUNT CARRIED BY EITHER PARTY AS
LONG AS SUCH AMOUNT IS IN EXCESS OF THE MINIMUM AMOUNT SPECIFIED. . . .

IN TEXAS, IF THE CONTRACTOR DOES NOT CARRY INSURANCE
IN THE MINIMUM AMOUNTS AS SPECIFIED IN THE INSURANCE REQUIREMENTS IN REGARD TO
THE MUTUAL INDEMNITY OBLIGATIONS THEN IT IS AGREED THAT THE CONTRACTOR HAS
APPROVED SELF-INSURANCE AS STATED IN THE [TOAIA] AND THE MUTUAL INDEMNIFICATION
AMOUNT SHALL BE THE MAXIMUM AMOUNT CARRIED BY THE COMPANY.   

 








The Agreement further provides in paragraph 9, that A[c]ontractor=s indemnity shall be without regard
to and without any right of contribution from any insurance maintained by
[Abraxas] pursuant to Paragraph 13.@ 
Exhibit A to the Agreement provides that Pool, at its own expense, will
maintain Awith respect to and for the duration
of this Contract@ the necessary insurance policies and that A[n]one of such insurance shall be
cancelled, altered, or amended@ without thirty days= notice to Abraxas.[15]  We read these provisions and the
contract as a whole as indicating an intent by the parties that Pool acquire
and maintain the requisite insurance for the duration of the Agreement, and
thus, bear the risk of any loss associated with its underlying insurance
obligations.[16]  There is nothing in the contract which
excepts from those obligations the possibility Pool=s insurer
may become insolvent, and nothing in the contract which indicates Abraxas
contracted to bear liability for that contingency.  Accord Ken Petroleum, 24 S.W.3d at 352B55
(finding that section 127.005(b) did not serve to invalidate an indemnity
provision, construing the TOAIA to give effect to the contract between the
parties).

We also note that the TOAIA has
been amended since its enactment, beginning in 1989, because liability
insurance has become more readily available to contractors to support their
indemnity obligations.  Id. at
349.  These amendments were intended to
make the statute less restrictive.  Id.
This change in the circumstances surrounding the enactment of the TOAIA makes
Pool=s
argumentCthat to
give full effect to the statute, we must read the TOAIA as invalidating the
mutual indemnity provisions hereCless
persuasive.








Finally, acknowledging a lack of
Texas precedent on the issue, Pool relies on a Fifth Circuit case, Ogea v.
Loffland Bros. Co., 622 F.2d 186 (5th Cir. 1980), to argue that, if read as
a whole, the contract provides that Pool does not have any indemnity
obligations for those amounts covered by insurance.  In Ogea, after an injury occurred and
the contractor paid a portion of the settlement, it pursued reimbursement
against the operator, Phillips Petroleum Company.  Id. at 187B88.  In its analysis, the Ogea court noted that during the
negotiations, Phillips had agreed to the indemnity provision only if the
contractor agreed to certain insurance requirements; however, the contractor
failed to purchase the necessary insurance. 
Id. at 188.  Under those
circumstances, the court stated that an Aeither-or@ analysis was appropriate, meaning
either the contractor purchased the insurance and, because the claim fell below
those insurance limits, Phillips would not have any obligation to reimburse the
contractor, or the contractor breached the agreement by not buying the
insurance and was therefore liable because it breached the insurance
provision.  Id. at 188B89. 
Essentially, by pursuing reimbursement, the contractor in Ogea
was requesting the court look only at the indemnity provision.  The court declined, noting that when the
contract was read as a whole, the parties intended Phillips would not be held liable
for any amounts covered by insurance, but after that amount Athe indemnity provisions would come
into effect.@ 
Id. at 190.  

From this, Pool argues that its indemnity obligations come
into existence only after the $1,000,000 limit, and it should be
reimbursed.  However, the Ogea
case is inapposite to the situation presented by this case.  Here, the question is whether the TOAIA,
because of its underlying purpose, operates to invalidate a mutual indemnity
provision when an indemnitor=s insurer becomes insolvent, placing the burden on the
indemnitee for the insurer=s insolvency.  Ogea
does not address this issue.  Also,
notably, the Ogea court construed the indemnity obligations of the
parties in light of the entire contract, just as we do here.  Id. at 189B90; see also Ken Petroleum, 24
S.W.3d at 352B55 (construing the TOAIA to give
effect to the contract between the parties). 
In this case, each party agreed to indemnify the other should an injury
occur regarding that party=s employee.  It is
undisputed that Carter was Pool=s employee and therefore, Pool had a contractual obligation
to indemnify Abraxas regarding that accident. 
Pool accepted this indemnity obligation. 
Pool has not directed us to any provision within the TOAIA which would
serve to invalidate this contractual obligation under the circumstances of this
case, nor has Pool provided evidence that its contractual indemnity obligations
became void.  








In sum, we find that the TOAIA
neither alters Pool=s
indemnity obligations because its insurer became insolvent prior to funding the
settlement, nor requires Abraxas to reimburse Pool for the money paid to settle
the underlying claim.  Further, because
we find the indemnity provision was not voided by the TOAIA, Pool is unable to
assert its claims for unjust enrichment or quantum meruit against Abraxas
because a valid contractual provision exists that covers the dispute.[17]  Accordingly, the trial court did not err in
granting summary judgment on these claims, and we overrule Pool=s first
issue.  

D.  Texas Property & Casualty Insurance
Guaranty Act

In its second issue, Pool argues
the trial court erred in granting Northfield=s motion
to dismiss Pool=s claims
because Abraxas failed to request that Northfield comply with the TPCIGA.[18]  Pool argues that Abraxas=s failure
caused Pool to pay a debt that otherwise would be paid by Abraxas or
Northfield; therefore, Pool claims it is entitled to legal indemnity[19]
from Abraxas.  Abraxas and Northfield
argue that Pool has no private cause of action under the TPCIGA.  We agree. 
In fact, Pool concedes as much; however, Pool argues that even if no
private cause of action exists, (1) it is not attempting to bring an action
under the TPCIGA, and (2) to enforce the legislative intent and framework of
the TOAIA and the TPCIGA, we must rule in its favor.  Essentially, Pool argues that because the
TPCIGA was intended to provide protection to those insured by impaired
insurers, if it is required to fund the settlement this legislative intent is
undermined.   We decline to construe the
TPCIGA in the manner suggested by Pool.  









First, in its third-party
petition, Pool did in fact assert a cause of action against Abraxas, alleging
Abraxas had violated the TPCIGA.  Second,
examining the plain language of the TPCIGA, we find nothing that allows Pool to
bring a cause of action against Abraxas under the circumstances of this
case.  Although Pool argues that the
TPCIGA indicates an intent by the Legislature that Northfield be obligated for
the $1,000,000 which Pool paid, assuming without deciding this was the
Legislature=s intent, there is nothing
transforming this intent regarding Northfield into a private right of action
against Abraxas.[20]  By virtue of the Agreement, Pool agreed to
indemnify Abraxas for the subject injuries. 
There is no language in the TPCIGA, nor in its purpose, that relieves
Pool of its obligations as indemnitor under the circumstances of this
case.  Accordingly, we overrule Pool=s second
issue and affirm the trial court=s
judgment.  

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed March 16, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

 











[1]  Although this
case is styled as Nabors Corporate Services, Inc., f/k/a Pool Offshore
Services v. Northfield Ins. Co., the parties have stipulated that APool Company Texas, Ltd.@ is the
correct party name to be used.  





[2]  Tex. Civ.
Prac. & Rem. Code
'' 127.001B.007. 





[3]  Tex. Ins. Code art. 21.28-C.





[4]  The Agreement
also required, with respect to mutual indemnities, that each party name the
other as an additional insured and their respective insurer=s were to waive any rights of subrogation. 





[5]  Tex. Civ.
Prac. & Rem. Code
' 127.005 (excluding from the purview of the TOAIA mutual
indemnity agreements providing that the parties agree to support the indemnity
obligations with insurance). 





[6]  Pool=s policy with Reliance had a $1,000,000 primary
liability limit. 





[7]  Specifically,
as stated in the settlement agreement, the claim was settled on behalf of AAbraxas and its insurers.@ 





[8]  Reliance was
designated as an impaired insurer on October 5, 2001.





[9]  Abraxas filed
counterclaims against Pool and also filed a separate lawsuit against
Northfield. 





[10]  Abraxas states
it raises the issue because it was Northfield=s motion
which effectuated the dismissal of Pool=s
third-party claims against Abraxas and Pool failed to include Abraxas as a
party in its docketing statement. 
Abraxas has filed its own docketing statement regarding this
appeal.   





[11]  This Court has
jurisdiction over all parties to the trial court=s
judgment.  See Tex. R. App. P. 25.1(b) (providing that
the filing of a notice of appeal by any party invokes jurisdiction over all
parties to the trial court=s judgment). 





[12]  See Tex. Civ. Prac. & Rem. Code '' 127.002B .003,
127.005.





[13]  This exclusion
is subject to the following limitations: 

 

(b)        With respect to a mutual indemnity
obligation, the indemnity obligation is limited to the extent of the coverage
and dollar limits of insurance or qualified self‑insurance each party as
indemnitor has agreed to obtain for the benefit of the other party as
indemnitee.

(c)        With respect to a unilateral indemnity obligation, the amount
of insurance required may not exceed $500,000.

 

Tex. Civ. Prac. & Rem.
Code ' 127.005.  





[14]  Importantly,
Pool does not argue that the indemnity provision was invalid at the time of
Carter=s fatal injury and indeed, concedes that the subject
indemnity provision was valid under the TOAIA at the time the Agreement was
executed. Pool also acknowledges that it did, in fact, procure the insurance as
required under the TOAIA and in accordance with the Agreement.  





[15]  Abraxas argues
the Agreement also provides that under the circumstances of this case, Pool is
deemed to be self-insured and thus, liable for the $1,000,000.  However, construction of that particular
provision is not necessary to the resolution of this issue.   





[16]  See
Autobond Acceptance Corp. v. Progressive Northern Ins. Co., 76 S.W.3d 489,
493 (Tex. App.CHouston [14th Dist.] 2002, pet. denied) (stating that
all parts of the contract must be read together, giving meaning to the whole
contract). 





[17]  See, e.g.,
Fortune Production Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000)
(stating that if a valid, express contract covers the subject matter of the
parties= dispute, recovery under an equitable theory is
inconsistent with the express agreement and thus, there can be no recovery
under a quasi‑contract theory).   





[18]  Tex. Ins. Code art. 21.28-C.





[19]  Pool does not
address its argument in relation to the elements of a common-law indemnity
claim and therefore, we do not analyze the argument in light of those elements.






[20]  In the trial
court, Pool claimed that both Abraxas and Northfield had violated the
TPCIGA.  On appeal, Pool does not assign
any error to the court=s dismissal of its counterclaims against Northfield
and  argues only that Abraxas had a duty
to Aprotect@ it
under the TPCIGA.  Thus, Pool waived any
argument that Northfield is directly obligated to reimburse it by virtue of the
TPCIGA. See Tex. R. App. P. 38.1;
Walden v. Affiliated Computer Servs., Inc., 97 S.W.3d 303, 324 (Tex.
App.CHouston [14th Dist.] 2003, pet. denied); see also
Fields v. City of Tex. City, 864 S.W.2d 66, 68 n.1 (Tex. App.CHouston [14th Dist.] 1993, writ denied); Young v.
Hodde, 682 S.W.2d 236, 237 (Tex. 1984) (noting that a final judgment
granting more relief than requested is not fundamental error and should be
considered by an appellate court if presented as an issue on appeal).