Affirmed and Memorandum Opinion filed August 30, 2007








Affirmed and Memorandum Opinion filed August 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00432-CV

____________

 

KELVYN AND SUSANA LAZO,
INDIVIDUALLY, AND D/B/A LAZO=S CUSTOM WOODWORK AND PABLO ABELLO, INDIVIDUALLY,
AND D/B/A PABLO ABELLO INSURANCE AGENCY, Appellants

 

V.

 

RSI INTERNATIONAL, INC. AND ST.
PAUL REINSURANCE COMPANY, LTD., Appellees

 



 

On Appeal from the 61st
District Court 

Harris County, Texas

Trial Court Cause No. 02-63470-A

 



 

M E M O R A N D U M   O P I N I O N








In this appeal, Kelvyn and Susana Lazo, individually and
d/b/a Lazo=s Custom Woodwork (Lazo) and Pablo Abello,
individually and d/b/a Pablo Abello Insurance Agency (Abello), appeal the
granting of a summary judgment in favor of St. Paul Reinsurance Company (St.
Paul) and its managing general agency, RSI International, Inc. (RSI).  Four
motions for summary judgment were filed, and the trial court ruled on three of
them.  The main issue in each motion, and the only issue on appeal, is whether
an insurance policy underwritten by St. Paul and purchased by Lazo was in
effect at the time of an accident.  Finding that the policy had been cancelled,
we affirm. 

Factual
and Procedural Background

Lazo works as a contractor, providing custom woodwork for
construction projects.  As a subcontractor, Lazo must maintain general
liability insurance coverage to protect against the risk of loss occurring on
the job.  Lazo had purchased a policy of general liability insurance,
underwritten by St. Paul, through a local agent, Pablo Abello.  The premiums
were financed through Surety Premium Finance Corp. (Surety).  Surety paid all
premiums in advance, and then collected periodic payments from Lazo.  As part
of its agreement to finance Lazo=s premiums, Surety
had a power of attorney which enabled it to cancel the policy as though the
cancellation were directly from Lazo if a payment from Lazo was more than ten
days late. 

The first payment under the finance agreement with Surety
was due on June 18, 2001. Lazo was eight days late in his first payment. 
Despite the fact that the payment was not yet overdue enough to warrant
cancellation, Surety sent a notice of cancellation to RSI on July 3, 2001.  RSI
subsequently issued an endorsement which read in pertinent part, AIt is hereby
agreed that in consideration of the return premium of $578.00, this policy is
cancelled effective 7/03/2001.@  For the next several months, Lazo
continued making timely payments to Surety, never having been told that the
policy had been cancelled, and St. Paul=s agent, RSI,
retained the unearned premiums despite its duty to return any unearned premiums
upon policy cancellation. 

On August 25, 2002, Aniceto Garcia, a worker on a building
project, fell from a ladder that he was climbing in order to inspect an air
conditioning unit installed in the attic.  Garcia sued  Lazo, among others,
claiming Lazo was negligent in failing to properly install and inspect the
ladder leading to the attic.  Lazo submitted Garcia=s claims to St.
Paul, who denied coverage, claiming that prior to the filing of the case,
coverage had been cancelled for failure to pay the required premiums.  








As a result of this denial of coverage, Lazo, on July 16,
2004,  filed a second lawsuit against several defendantsCAbello, Surety,
RSI, and St. Paul.  Lazo sought a declaratory judgment that the coverage
contract was in full force and effect as of the date of the Garcia accident,
and in his Eighth Amended Petition he asserted claims of breach of contract,
negligence, breach of fiduciary duties, violations of the Texas Insurance Code,
violations of the Texas Deceptive Trade Practices Act, fraud, and violation of
common law duty of good faith and fair dealing.  Over the next several months,
the defendants filed answers, counterclaims, and cross-claims against each
other.  This suit, regarding insurance coverage, was consolidated with the
personal injury suit on May 24, 2005.  

On June 26, 2005, Abello filed a motion for partial summary
judgment on the issue  of whether the insurance policy was in force at the time
of Garcia=s accident.  Lazo also filed a motion for summary
judgment solely on the issue of whether the policy had been cancelled.  St.
Paul filed a single response to both Abello=s and Lazo=s motions for
summary judgment.  St. Paul then filed its own motion for summary judgment on
the coverage issue as well as on all collateral claims, and in an amended
motion for summary judgment, sought indemnity from Abello and RSI.  RSI
answered all three motions for summary judgment separately, joined St. Paul=s first motion for
summary judgment, and then later, after St. Paul amended its motion, RSI filed
its own motion for summary judgment as to all claims asserted by Lazo,
including coverage.

On February 3, 2006, the trial court granted RSI=s motion for
summary judgment.  The court also granted St. Paul=s motion for
summary judgment as to coverage and all collateral claims asserted by Lazo, but
denied St. Paul=s motion as to indemnity against Abello
and RSI.  Finally, the court denied Abello=s partial summary
judgment motion seeking a declaration that the policy was in effect at the time
of the accident.  Nothing in the record indicates that the court ever ruled on
Lazo=s motion for
summary judgment.  On May 25, 2006, the court entered an order that all claims
by Lazo and Abello against RSI and St. Paul be severed and that a final
judgment be entered as to all issues between RSI, St. Paul and the remaining
parties.  Abello and Lazo brought this appeal.








Analysis

The sole issue on appeal is whether the trial court erred
in deciding that the policy purchased by Lazo had been effectively cancelled as
a matter of law at the time Garcia=s accident took
place. 

I.        Standard
of Review

We review the trial court=s summary judgment
de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  When reviewing a summary judgment, we take as true all evidence
favorable to the nonmovant, and we indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
When more than one party files a motion for partial summary judgment on the
same issue, and the trial court grants one or more motions and denies one or
more motions, the reviewing court should review all summary judgment evidence
and determine all questions presented.  See Dorsett, 164 S.W.3d at 661. 
The reviewing court should render the judgment the trial court should have
rendered.  City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356
(Tex. 2000).  

II.       Policy
Had Been Effectively Cancelled

The language of the original policy says that cancellation
of the policy will be effective even if a refund has not been made or offered. 
Lazo and Abello urge three reasons that this contract language does not
control: 1) failure to follow the Insurance Code=s mandate that unearned
premiums be returned within 60 days of cancellation prevents cancellation; 2)
the language used in an endorsement makes cancellation dependent on the return
of unearned premiums; and 3) equitable estoppel prevents St. Paul from
cancelling the policy.[1] 
We discuss these arguments in turn.








A.      Return of
Unearned Premiums Not Prerequisite to Cancellation Under Insurance Code

Lazo and Abello
argue that when an insurer fails to return unearned premiums within the
allotted time, the result is that the policy is not cancelled. The provision of
the Insurance Code relied upon by Lazo and Abello is former Texas Insurance
Code article 24.17(f), which provides the following in pertinent part:

Whenever a financed insurance contract is canceled, and the premium
finance agreement contains an assignment or power of attorney for the benefit
of the premium finance company, the insurer shall return whatever unearned
premiums are due under the insurance contract directly to the premium finance
company within 60 days after the policy cancellation date.

Act of
June 14, 1989, 71st Leg. R.S., ch. 690, ' 2, 1989 Tex. Gen.
Laws 3187, 3187, repealed by Act of June 21, 2003, 78th Leg. R.S., ch.
1274, ' 26(b)(4) (current
version at Tex. Ins. Code ' 651.162(b))
(because former Tex. Ins. Code
art. 24.17 governs this case, we will cite to the article).  Plain statutory
language does not support Lazo and Abello=s argument. 
Nowhere in the remainder of the section nor in the remainder of the Insurance
Code is the failure to refund unearned premiums connected to the continued
effectiveness of the insurance contract.  In fact, the plain language of the
section suggests that cancellation occurs separately from the refunding of any
unearned premiums.  See id. (providing that the refund of premiums is to
occur within 60 days of cancellation).  








Neither Lazo nor Abello provides any case law to support
their proposition.  A recent case from this court, although it does not
expressly refer to former article 24.17(f), establishes that  the failure to
return unearned premiums is immaterial to cancellation of the policy when the
contract language does not make return of unearned premiums a condition
precedent to cancellation.  See Autobond Acceptance Corp. v. Progressive N.
Ins. Co., 76 S.W.3d 489, 494 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied);  see also Austin Fire Ins. Co. v. Polemanakos,
207 S.W. 922, 924B25 (Tex. Comm=n App. 1919, judgm=t adopted); Ins.
Co. of Tex. v. Parmelee, 274 S.W.2d 944, 946 (Tex. Civ. App.CAustin 1955, no
writ);   Transcontinental Ins. Co. of N.Y. v. Frazier, 60 S.W.2d 268,
270 (Tex. Civ. App.CWaco 1933, no writ); Ellis v. Hartford
Fire Ins. Co., 21 S.W.2d 88, 91 (Tex. Civ. App.CAmarillo 1929,
writ ref=d); 2 Lee R. Russ & Thomas F. Segalla, Couch on
Insurance ' 32:62 (3d ed. 2006) (stating the general
rule that return of unearned premiums is not a prerequisite to cancellation,
and citing cases from several jurisdictions); 43 Am. Jur. 2d Insurance ' 436 (2003)
(same).  

The failure to comply with former article 24.17(f) does not
mean that the insurance policy will survive despite cancellation.  Therefore,
we overrule appellants= first argument.

B.      Endorsement
Language Not Controlling

Lazo and Abello argue alternatively that the contract
language, as amended by an endorsement issued by St. Paul, makes the return of
unearned premiums a condition precedent to cancellation.  

An insured has the right to cancel an insurance policy in
accordance with a specific policy provision giving it the right to do so.  See
Autobond Acceptance Corp., 76 S.W.3d at 494.  Here, the policy provisions
provided that the Afirst Named Insured@ may cancel the
policy by mailing or delivering to the insurance company advance written notice
of cancellation, and that the notice will state the effective date of
cancellation, on which date the policy period will end.  Surety, under its
power of attorney, gave notice of cancellation, with the effective date of
cancellation being July 3, 2001.  Thus, the contract was cancelled effective
July 3, 2001.  The endorsement in question was not issued until August 17,
2001, approximately a month and a half after the contract was already
cancelled.  The contract that the endorsement purported to amend was no longer
effective as a legal obligation.  See Savage v. Doyle, 153 S.W.3d 231,
235 (Tex. App.CBeaumont 2004, no pet.); Ferguson v. DRG/Colony N.,
Ltd., 764 S.W.2d 874, 887 (Tex. App.CAustin 1989, writ
denied).  Thus, there was nothing to amend.  The endorsement was, at that
point, a nullity.  We overrule Lazo and Abello=s second argument.









C.      Equitable
Estoppel Not Applicable 

Abello=s third argument is that equitable
estoppel precludes a finding that the policy was cancelled.[2] 
According to the Texas Supreme Court, equitable estoppel requires the following
elements: 1) a false representation or concealment of material facts; 2) made
with knowledge, actual or constructive, of the facts; 3) the party to whom it
was made must have been without knowledge or means of knowledge of the real
facts; 4) it must have been made with the intention that it should be acted on;
and 5) the party to whom it was made must have relied on or acted on it to his
prejudice.  Gulbenkian v. Penn, 252 S.W.2d 929, 932 (Tex. 1952).  

Abello fails to set out the elements of estoppel, or point
to specific evidence that would prove each element.  The only argument Abello
makes regarding estoppel is that St. Paul admitted that it has held Lazo=s money for years
and had no plans to give it back.  This is insufficient to prove even the first
element.  As we held above, refund of the unearned premiums is not necessary to
cancellation.  Therefore, retention of the funds is not inconsistent with the
position that the policy had been cancelled.  See id. (noting that plain
contradiction of former allegations or acts is necessary to invoke estoppel). 
Furthermore, payment of the unearned premiums would have been to Surety, not to
the insured, which means that even had reimbursement of the unearned premiums
been made, it would not have put Lazo on notice that his policy was cancelled,
unless the refund was for more than Lazo owed.  See Tex. Ins. Code art. 24.17(g).  St. Paul
and RSI did nothing inconsistent with their position that the policy had been
cancelled.  Therefore, there was no Afalse
representation@ of continued coverage.  See Gulbenkian, 252
S.W.2d at 932.[3] 
We overrule Abello=s third argument.  








Conclusion

Having overruled each argument making up Lazo and Abello=s sole issue on
appeal, we affirm the judgment of the trial court.  

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 30, 2007.

Panel consists of
Justices Anderson, Fowler, and Seymore.









[1]  Lazo and Abello, with an exception noted below, make
the same arguments.  Therefore, we consider them together.  





[2]  Although Lazo purports to adopt all of Abello=s arguments by reference, Lazo did not include the
equitable estoppel ground in his motion for summary judgment.  Therefore, he
cannot assert it as a ground for reversing the summary judgment on appeal.  See
Tex. R. Civ. P. 166a(c).  





[3]  We note that Lazo makes an additional argument in
his brief concerning the Aduty to defend.@ 
However, this argument assumes the existence of an insurance policy.  Since we
have held the policy had been cancelled at the time of the Garcia injury, we
need not address this issue.